In the Matter of The **LIBERAL MARKET INC.**, Debtor.

Bankruptcy No. 3–81–00305.

United States Bankruptcy Court, S.D. Ohio, W.D.

Oct. 18, 1982.

Peter J. Donahue, Dayton, Ohio, Taft, Stettinius & Hollister, Cincinnati, Ohio, Ted B. Clevenger, Bell & Clevenger Co., Columbus, Ohio, Stokes, Lazarus & Watson, Atlanta, Ga., for debtor.

Ira Rubin, Thomas R. Noland, Dayton, Ohio, Leon C. Marcus, New York City, Jay A. Rosenberg, Cincinnati, Ohio, for Official Creditors Committee.

## DECISION AND ORDER

CHARLES A. ANDERSON, Bankruptcy Judge.

### I

This matter is before the Court for consideration of nine fee applications filed by professional persons employed under 11 U.S.C. §§ 327 or 1103, and a fee application by the Examiner appointed pursuant to 11 U.S.C. § 1104(b). The applications were consolidated for evidentiary hearing, which the Court held on 3 August 1982. Note 11 U.S.C. §§ 330(a) and 503(b)(2). The following Decision and Order constitutes the Court's findings required by 11 U.S.C. § 330, and determination of allowability under 11 U.S.C. § 503(b)(2). The Court notes that it is undisputed that all appli-

cants *sub judice* were duly appointed and exercised proper authority to act in their alleged capacities. The Court further notes that attorneys for Debtor expressed concern that the total amounts requested might be beyond the ability of Debtor to pay in light of current economic stresses.

Attorneys' fee applications are now controlled by Section 330 of the Code, with false parsimony negated. The precedents of pre-Code criteria, however, are yet applicable and the problems of excessive legal fees still endemic. A good advocate must apply his talents in representing himself. The profession does not, and a court cannot, obviate the purpose and intent of professional standards such as the American Bar Association guidelines promulgated in the Code of Professional Responsibility's Disciplinary Rule 2–106.*

■ The Court is under a duty to determine independently the reasonableness of fees charged by professionals against a debtor's estate, even if there are no objections by parties in interest. 11 U.S.C. §§ 329, 330 and 503(b); *In re Johnson,* 21 B.R. 217 (Bkrtcy.D.D.C.1982); *In re Erewhon, Inc.,* 21 B.R. 79 (Bkrtcy.D.Mass.1982); and *In re Crutcher Transfer Line, Inc.,* 20 B.R. 705 (Bkrtcy.W.D.Ky.1982). In fact, the requirement of court inquiry is codified for the very reason that fees often are asserted against a bankruptcy estate without any adverse interests appearing at the hearing. Judicial scrutiny is, of necessity, based upon hindsight, tempered with the court's subjective factual determinations of reasonableness based upon its own general

experience, observations, and expertise in the area. *In re Erewhon, Inc., supra.* As previously indicated by this Court, the Court will decide such matters as hourly rates, the difficulty and complexity of legal issues, the quality of legal services, and the amount of time billed for various legal tasks, without the necessity of expert testimony unless a particular element or elements have been placed in issue. See this Court's opinion in *Matter of Swartout,* 20 B.R. 102, 9 B.C.D. 313 (Bkrtcy.S.D.Ohio 1982), and citation therein.

■ The burden of proof in all fee matters is on the applicant. *Matter of Swartout, supra; In re Underground Utilities Construction Co., Inc.,* 13 B.R. 735 (Bkrtcy.S.D.Fla.1981); *Matter of Olen,* 15 B.R. 750, 8 B.C.D. 555, 5 C.B.C.2d 944 (Bkrtcy.E.D.Mich.1981). As professionals, all fee applicants are held to a high standard in the discharge of their duties. *Matter of Grant,* 14 B.R. 567, 3 C.B.C.2d 811 (Bkrtcy.S.D.N.Y.1981). The Bankruptcy Code, however, permits compensation competitive with other fields in order to attract bankruptcy specialists of high quality, thereby avoiding the "bankruptcy haircut" resulting from the previous "economy of administration" standard utilized under the Bankruptcy Act. 11 U.S.C. §§ 330(a)(1) and 503(b)(4); *In re Penn-Dixie Industries, Inc.,* 18 B.R. 834, 838–839, 8 B.C.D. 1134 (Bkrtcy.S.D.N.Y.1982); *In re Perros,* 14 B.R. 515, 517 (Bkrtcy.E.D.N.Y.1981), and citation therein. In this regard, this Court disagrees with the opinion of *Matter of R.C. Sanders Technology Systems, Inc.,* 21 B.R.

---

\* DR 2–106. Fees for legal services

(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.

(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

(5) The time limitations imposed by the client or by the circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

40 (Bkrtcy.D.N.H.1982) to the extent that it allows fees only "at the lower end of the spectrum of reasonableness," as such reading is not required by the language of the statute nor consistent with the Code's objective of allowing high enough professional fees to compete with non-bankruptcy fields for highly qualified professionals. See H.R. Rep. No. 595, 95th Cong., 1st Sess. 330 (1977), reprinted in [1978] U.S.Code Cong. & Ad.News 5963, 6286; and S.Rep. No. 989, 95th Cong., 2d Sess. 41 (1978), reprinted in [1978] U.S.Code Cong. & Ad.News 5787, 5827; both cited in *In re Klemen*, 21 B.R. 77, 78 (Bkrtcy.N.D.Ill.1982). The Court notes, however, that fees should nevertheless be closely scrutinized with a view toward eliminating excessive charges or wasteful services and expenditures of professional time. The Court also notes that, in order to conserve the estate, the use of paralegals is specifically encouraged by the Code. 11 U.S.C. § 330(a)(1); and see *In re Klemen, supra,* 77, and citation therein; and *In re Erewhon, Inc., supra.*

■ Because of the considerable absence of a "bargaining process" in the calculation of professional fees charged against a debtor's estate, the basic purpose of Court inquiry into professional fees is to inject *quantum meruit* concerns in order that the basic elements of the contractual bargaining process will be applicable to assist in regulating excessive claims. 11 U.S.C. §§ 328, 329 and 330. In a manner of speaking, it is the duty of the Court to insure that the debtor receives what was "bargained for." Given the practical difficulties in verifying the bookkeeping of fee applicants, who in this setting have little disincentive not to "pad" their applications, the Court is not bound by allegations of services provided, even if uncontested, if the record indicates that the *quantum meruit* value of the services performed is less than the amount requested. Of particular concern, the Court should attempt to avoid double compensation for duplication of services. *Cle-Ware Industries, Inc. v. Sokolsky,* 493 F.2d 863 (6th Cir.1974); *In re Crutcher Transfer Line, Inc., supra,* at 710; *In re Erewhon, Inc., supra,* at 85. In addi-

tion, the fee requested should be justified by more than merely the number of hours spent in order to avoid overcompensating the dilatory, inefficient attorney. *In re Crutcher Transfer Line, Inc., supra; In re Erewhon, Inc., supra; In re Hotel Associates, Inc.,* 15 B.R. 487, 5 C.B.C.2d 669 (Bkrtcy.E.D.Pa.1981). A fee applicant, therefore, should document all services by itemized records which indicate the substance of tasks performed, *In re Doyle-Lunstra Sales Corporation,* 19 B.R. 1003 (D.S.D.1982), though the Court may take judicial notice of the Court record and infer reasonableness therefrom. *In re Underground Utilities Construction Co., Inc., supra.*

■ The threshold question in determining the allowability of fees should be whether the alleged services were actually provided and necessary. 11 U.S.C. §§ 330 and 503(b)(2); *Matter of Swartout, supra; Matter of Olen, supra.* Once documented, "actual and necessary expenses" are automatically reimbursable. 11 U.S.C. § 330(a)(2). Fees charged for services are further scrutinized, however, to ascertain their reasonableness "based on the time, the nature, the extent, and the value of such services, and the cost of comparable services other than in a case under this title." 11 U.S.C. § 330(a)(1). The Court may also consider the difficulty of the legal issues involved, the applicant's expertise, and the ultimate failure or success in accomplishing desired results on the Debtor's behalf. See this Court's opinion in *Matter of Swartout, supra,* at 105, and citation therein. It is significant to note that the Court is not bound by the employment arrangements agreed to by a creditors' committee, trustee, or debtor in possession in the exercise of employment powers under 11 U.S.C. §§ 1103, 327, or 1107, respectively. Instead, the Court may retrospectively "rewrite" the terms of compensation if deemed "improvident" as originally contracted. 11 U.S.C. § 328(a). The compensation requested by an attorney for the debtor (in a proceeding involving a Chapter 11 debtor in possession, the attorney who renders pre-

petition services for debtor *qua* debtor) is further subject to Court inquiry into the connection of such services with the bankruptcy proceeding, exempting such services to the extent properly chargeable under 11 U.S.C. §§ 329 and 330 from the trustee's avoidance powers. *Matter of Swartout, supra.*

One issue which is, by definition, endemic to all fee applications is the proper hourly rate chargeable by professionals. This question has been the subject of considerable litigation. See discussions in *In re Erewhon, Inc., supra; Matter of R.C. Sanders Technology Systems, Inc., supra;* and *In re G.W.C. Financial & Insurance Services, Inc.,* 8 B.R. 122, 7 B.C.D. 109 (Bkrtcy.C.D.Cal. 1981). Although the Court will consider the instant requests individually, some general background comments, particularly regarding the hourly rates charged for legal services, are appropriate.

■ Section 330(a)(1) only anticipates compensation for an attorney's "actual and necessary" professional legal services. There is no entitlement as legal services for nonlegal services related to the operation of a business which should be performed by a debtor in possession or trustee. See 11 U.S.C. § 328(b); *Cle-Ware Industries, Inc. v. Sokolsky, supra,* at 874; and *Matter of Braswell Motor Freight Lines, Inc.,* 630 F.2d 348, 350 (5th Cir.1980).

■ The basic litmus test for professional fees is the average rate charged by "local" professionals for similar work. The practical concept of locality, however, may vary depending upon the volume and difficulty of the work involved in a particular case. In determining average attorney fees, the "local bar" in an area of law necessitating both specialization and large volume work may bear only remote relation to the immediate geographic locality. Rather, if a case requires expert opinion, the fee for such service should be measured by the average charged by "local experts," meaning those experts typically consulted for assistance in geographically local matters.

■ Traditionally the practice of corporate and commercial law, the essence of most Chapter 11 proceedings, has been compensated with highly competitive salaries above those chargeable by the average practitioner. Legal services in cases, such as the case at bar, involving complex corporate legal problems requiring a large time commitment, have commanded particularly high compensation to attract the services of exceptionally qualified attorneys. In light of the desire to attract highly qualified practitioners to the field of bankruptcy, the higher fees chargeable by attorneys in related fields should be accommodated accordingly. On the other hand, the Court is under a duty to restrain unnecessary escalation of fees by insuring their general reasonableness. An "expert," therefore, should not be allowed top compensation for mundane tasks; nor should an expert be overcompensated merely because other experts are overcompensated.

■ This Court is also of the opinion that the compensation requested by professionals within the same proceeding is relevant to the reasonableness of the fees of all the professionals before the Court. The fee requests of individuals whose work is high quality and requires a time commitment which can be compared to that of other professionals in the same proceeding may constitute key evidence, which can be adduced from the record itself, as to the *quantum meruit* value of the services of the latter. If attorneys perform similar tasks arising out of an identical factual circumstance, disparity in fee requests may itself indicate an inflated hourly rate or excess time involved in preparation.

■ As a general rule, this Court agrees with the determination in *Matter of R.C. Sanders Technology Systems, Inc., supra,* at 43, that hourly rates in the $75.00 to $100.00 range for legal services in a corporate reorganization are generally reasonable, and comport with the average hourly rates charged by "local" experts in related nonbankruptcy matters. 11 U.S.C. § 330(a)(1). This generality, however, is subject to the Court's consideration of the

quality of the work and the expertise of the practitioner. Such determination is further subject to the Court's assessment of the *quantum meruit* value of the professional services charged. 11 U.S.C. §§ 328(a), 329(b) and 330(a)(1). The Court also notes, however, that the aggregate average hourly rate charged by the members of a law firm is sufficient to establish the reasonableness of the fee requested by such firms without close scrutiny of the rates charged by individual firm members, since fees are paid to law firms as a single entity and the variation in hourly rates among firm members is essentially the firm's internal distribution of the lump sum fee award. Note 11 U.S.C. § 504(b)(1). In this regard, the Court requires, however, all firms to disclose the rates of individual firm members and associates so that the Court may properly examine the reasonableness and accuracy of the firm's calculation of its aggregate fee.

## II

Preliminary to consideration to the instant fee applications individually, the Court generally commends the attorneys at bar for their efficiency and high-caliber work in resolution of a difficult case involving a Debtor in Possession (of a supermarket chain) with initial assets estimated to be over twenty million dollars in value, and replete with numerous corporate and labor disputes, and contractual involvements. The case presented complex and varied legal questions, a number of which were novel and not the subject of statutory or judicial guidelines. In addition, the successful Chapter 11 Plan involved considerable very delicate compromises, effected primarily from the efforts of the legal counsel involved. As a result of these efforts, considerable litigation was settled or avoided to the direct benefit of the estate. The large amount of litigation presented to the Court is but a fraction of what could have been litigated had the parties involved been less amenable to the reasonable and mature conciliation evidenced by the very terms of the Plan. The expertise of the services rendered by all law firms has been equally demonstrated from the results obtained.

There has not been established any reason, in fairness to all contributors, to deem any participant as "more expert" than the others.

With this background commentary in mind, the basic task before the Court is to address the merits of each fee application individually, as follows:

(1) Stokes, Lazarus & Watson (hereinafter "Stokes") Atlanta, Georgia:

Stokes is an out-of-state law firm which counseled Debtor prior to the instant proceeding, 11 U.S.C. §§ 329(a) and 330, and served as co-counsel for Debtor in Possession for the first two months following Debtor's Petition filing, 11 U.S.C. §§ 327(a), 328(a), and 1107(a). It is undisputed that Stokes was duly authorized to act as co-counsel along with O'Brien, Leve and Ambrose Co., L.P.A. (hereinafter O'Brien), though the Court notes that O'Brien has not filed a separate application for fees.

Stokes' application requests $21,314.00 for services provided and $3,153.05 for expenses incurred. The requests are documented by extensive itemized billing records.

■ The records verify that the expenses, mostly long distance phone calls and airfare, were actually incurred and appear to have been "necessary." The Court therefore sees no reason to disallow the expenses as requested. 11 U.S.C. §§ 330(a)(2) and 503(b)(2).

■ The charge for services provided, however, should be more closely examined. 11 U.S.C. §§ 328(a), 329(b) and 330(a). The Court initially notes that the request includes a charge of $3,500.00 labeled, "retainer to local attorneys." Apparently, O'Brien received payment "from Debtor" vicariously through Stokes out of a prepetition retainer advanced by Debtor to Stokes. The Court notes, however, that O'Brien's services were performed in the capacity of "co-counsel" for Debtor, and further are not documented by any independent records, as O'Brien has not applied for compensation

from the estate. Although a law firm may apply as a single entity for a single fee which may be divided among firm members within the discretion of the firm, 11 U.S.C. § 504(b)(1), the Code and Court rules specifically proscribe arrangements for the sharing of a fee between law firms. 11 U.S.C. § 504(a). The Court therefore disallows the $3,500.00 charge on the ground that the charge is not "for services rendered by" Stokes, 11 U.S.C. §§ 329(a) and 330(a)(1), and, as a result, may not be properly allowed as compensable services chargeable by Stokes. 11 U.S.C. § 503(b)(2) and 504(a)(1).

The remaining $17,814.00 charge is for various services calculated by multiplying the number of hours alleged to have been spent by Stokes times Stokes' hourly rate of $80.00 for attorneys and $25.00 for legal assistants. It is the opinion of the Court that Stokes' hourly rates are "reasonable," in the present context. Relevant criteria for this finding include the varied and complex legal issues posed by Debtor's Petition filing, ranging from labor to property questions, and the difficulty of the work impliedly necessary to coalesce all of the bookkeeping for a corporation the size of Debtor. The Court notes that Stokes has not alleged specialization or particular expertise in the area of bankruptcy law.

■■■■■ The itemization of Stokes' records indicates that most of the services rendered were of a type properly chargeable to Debtor's estate. The Court, however, takes exception with two items charged. First, Stokes has charged two hours for attendance at a "seminar of Commercial Law League of America on Chapter 11 reorganizations" on 31 January 1981. It is the opinion of the Court that educational seminars should not properly be charged to a debtor's estate, and are instead part of the training costs which, in essence, justify an attorney's hourly rate. Since no specific connection between the seminar and Debtor's proceeding has been demonstrated, the charge is accordingly reduced $160.00, leaving a balance of $17,654.00 claimed for services. Second, Stokes has charged a total of

five and a half hours for matters which directly involved calculation of Stokes' attorney fee, including litigating the return of a portion of Debtor's prepetition retainer, various continuances and scheduling requests, and the original Application for Fees itself. It is the determination of the Court that matters regarding the computation of an attorney fee is not a "service rendered" on behalf of a debtor, but is instead an expense of doing business which should not be chargeable to a debtor's estate. 11 U.S.C. § 330(a)(1). Stokes' request is accordingly reduced an additional $440.00 (5.5 hours times $80.00), leaving a balance of $17,214.00 claimed for services rendered.

■■■■ The remaining services appear to have been reasonably calculated toward organizing Debtor's prepetition affairs in anticipation of Debtor's imminent bankruptcy filing, 11 U.S.C. §§ 329 and 330(a)(1); *Matter of Swartout, supra,* and toward meeting Debtor in Possession's real legal needs following Debtor's Petition filing, 11 U.S.C. §§ 327(a), 328(a) and 330(a)(1). The Court, however, is not in a position to assess accurately the reasonableness of the number of hours spent in preparation, (220.3 attorney hours), alleged by Stokes to have been necessary because of "*difficulty* in ... preparation ... due to the poor books and records kept by Debtor, the inadequacy of accurate accounting records and documents, and the numerous interlocking business relationships between Debtor and other businesses." Compounding the Court's uncertainty as to the number of hours spent, Stokes withdrew as co-counsel for Debtor upon Debtor's request, inevitably requiring subsequent counsel to reevaluate Debtor's records. The single ostensible benefit toward Debtor's reorganization evidenced by the record as contributed by Stokes was the filing of Debtor's Petition. Although the Court believes that the presumption that Stokes' application was filed in good faith has in no way been challenged, it is the opinion of the Court that Debtor's estate should not bear the total cost of subsequent counsel's duplication of Stokes' efforts, and

of the required filings to enable substitution of counsel. To avoid the inherent judicial arbitrariness in assessing the *quantum meruit* value of fees as much as possible, the Court therefore additionally reduces Stokes' fee request by the number of hours (9.3 attorney hours) charged for preparation and extensions related to the substitution of counsel. 11 U.S.C. § 328(a). Stokes' charge is accordingly reduced $744.00 (9.3 hours times $80.00 per hour), leaving a balance of $16,470.00 claimed for services. 11 U.S.C. §§ 328(a); 28 U.S.C. § 1481.

IT IS HEREBY ORDERED that Stokes' fee application is allowed in the amount of $16,470.00 for services rendered and $3,153.05 for expenses incurred. In light of the fact that the present balance of Debtor's prepetition retainer presently in Stokes' possession is $24,467.05, IT IS FURTHER ORDERED that Stokes return to the Debtor in Possession the overpayment, in the amount of $4,844.00, in excess of the above allowances. 11 U.S.C. § 542(a).

(2) Taft, Stettinius & Hollister (hereinafter "Taft"), Cincinnati, Ohio:

Taft was employed by Debtor in Possession pursuant to Court Order authorizing employment as special labor counsel for the basic purpose of representing Debtor in Possession in regard to continuing labor disputes which arose prior to Debtor's Petition filing. Note 11 U.S.C. §§ 327(a), 328(a) and 1107(a). Taft has applied for an aggregate fee of $6,901.95, $181.95 of which are for reimbursement of expenses.

The expenses charged are primarily for miscellaneous items such as postage, phone calls and photocopying. The expenses appear to be "actual and necessary," and the Court perceives no reason to disallow them. 11 U.S.C. §§ 330(a)(2) and 503(b)(2).

The $6,631.95 charge for services constitutes a billing for 24 hours expanded by firm partners, and 58 hours by firm associates, at an average hourly rate of just over $80.00. It is the opinion of the Court that Taft's hourly rate is "reasonable" in light of the complexity of Debtor's prepetition labor involvements.

The Court further finds that the extent of Taft's services was reasonable. The itemization of Taft's efforts documents that Taft's services were provided to meet Debtor's actual and imminent needs arising in various pending labor proceedings. The Court also notes that all of Taft's services charged are postpetition, and were not objected by parties in interest. The Court also notes that Taft's services appear to have been properly coordinated with Debtor's efforts toward reorganization.

IT IS THEREFORE ORDERED that Taft is allowed $6,631.95 for services rendered and $181.95 for expenses incurred.

(3) Bell & Clevenger, Columbus, Ohio:

Bell & Clevenger served as special tax counsel for Debtor in Possession. Note 11 U.S.C. §§ 327(a), 328(a) and 1107(a). The application requests allowance of $988.32, of which $722.25 has already been paid. The Applicant requests $43.32 for expenses (phone, xeroxing, and travel) and payment of $945.00 for services billed at just under $80.00 per hour. It is the finding of the Court that these expenses and services appear reasonable, actual and necessary. The Court notes that Bell & Clevenger's work was favorably performed, and there were no objections of record.

IT IS THEREFORE ORDERED that Bell & Clevenger's claim is allowed as requested, and that Bell & Clevenger should therefore be paid $266.07, the balance remaining on its claim as allowed.

(4) Smith & Schnacke, Dayton, Ohio:

Smith and Schnacke has served as counsel for Debtor in Possession throughout all proceedings subsequent to their employment on 3 March 1981, approximately two months subsequent to Debtor's Petition filing. 11 U.S.C. §§ 327(a), 328(a) and 1107(a). Smith and Schnacke has requested allowance of $329,115.66 for services rendered (inclusive of 300 "additional hours [which] may be required") and $11,908.44 for expenses. Since Smith and Schnacke has already credited Debtor's deposit of $38,878.26, Smith

and Schnacke therefore requests distribution of $302,145.84.

It is the opinion of the Court that Smith and Schnacke has been a primary contributor to the ultimate success of the instant proceeding, and that the efforts of Smith and Schnacke, particularly in regard to the completion and approval of the Plan of Reorganization, have been directly beneficial to the estate. The Court is also of the opinion that Smith and Schnacke's hourly rate of $86.00 is entirely reasonable given the firm's excellent handling of the complex and multifaceted legal issues concerning Debtor's reorganization. The Court notes that Smith and Schnacke "discounted" their attorney fees by 12% to arrive at the $86.00 hourly rate in order to avoid any implication of a duplication of services resulting from the large number of attorneys involved in the joint handling of various matters in Debtor in Possession's reorganization. The Court also notes that Smith and Schnacke made considerable use of paralegals at a substantially reduced hourly rate.

Based upon Smith and Schnacke's fee application and billing itemization, it is the determination of the Court that Smith and Schnacke's services to date were actual, necessary and reasonable. The Court again notes the considerable *quantum meruit* value of Smith and Schnacke's efforts, particularly in completion of the Plan and conciliation evidenced therein of numerous adversarial matters which would otherwise have delayed or defeated a reorganization and depleted estate assets. It is the finding of the Court that Smith and Schnacke's fee application for services and expenses to date should be allowed as requested.

 Smith and Schnacke's aggregate fee request, however, also includes a charge of $27,000.00 for an estimated 300 hours of services which "may be required." It is the determination of the Court that services may not be compensated until "actually rendered," 11 U.S.C. §§ 330(a)(1) and 503(b)(2), and that anticipated future services may only be allowed upon future application. Smith & Schnacke's fee request is accordingly reduced $27,000.00, leaving a balance of $302,115.66 requested for services rendered.

IT IS HEREBY ORDERED that Smith and Schnacke is allowed $302,115.66 for services and $11,908.44 for expenses, and that Smith and Schnacke should therefore receive $275,145.84 for the amount allowed in excess of the $38,878.26 already received.

(5) and (6) Leon C. Marcus, P.C., New York, N.Y. (hereinafter "Marcus") and Straus, Troy & Ruehlman Co., L.P.A., Cincinnati, Ohio (hereinafter "Straus"):

Both of the above law firms acted in the capacity of co-counsel for the Official Creditors' Committee. Since these firms acted jointly in their capacities, their fee applications will be considered jointly for the convenience of the Court.

The Court initially notes that all services provided by the instant Applicants appear to have been well performed. The Applicants appear to have diligently and expeditiously assumed their responsibilities as outlined in 11 U.S.C. § 1103(c). Of particular benefit to the estate, the Applicants monitored the activities of Debtor in Possession, and demonstrated the need for appointment of an examiner. See *Matter of Liberal Market,* 11 B.R. 742, 7 B.C.D. 451 (Bkrtcy. Ohio 1981). In addition, the Applicants extensively investigated Debtor's corporate involvements and financial arrangements, and were therefore able to act as informed advisers which, in light of the complex corporate arrangements and allegations of fraudulent conduct, in and of itself was beneficial to the estate.

 Marcus requests $132,018.25 for legal services provided and $15,241.30 for expenses incurred. $117,035.00 is charged for attorney services billed at hourly rates varying from $80.00 to $135.00, with an average attorney charge of over $125.00 for the 933.75 attorney hours billed. Although the instant case could have involved actual complex litigation, it is the opinion of the Court that, looking retrospectively, the services actually provided by the instant

Applicants proved to be largely limited to investigative and research tasks which did not require extraordinary expertise. It is the determination of the Court that the hourly rates charged by Marcus should therefore be reduced to $86.00 in accordance with the Court's above general discussion of reasonable hourly rates for expert services in this case context. The law firm of Smith & Schnacke, being one of the largest 200 firms in the United States, practicing nationally, has fixed a standard of value in the context locality for legal services. Since the expertise is not exceeded by the other applicants, intrinsic fairness dictates that all fees be fixed on a par. Furthermore, this rate compares favorably with the higher billing rates for the locality as published by Altman & Weil, Inc., of Ardmore, Pennsylvania and the 1980 Economic Survey of the Columbus Bar Association, LIV Ohio State Bar Association, Report No. 4, January 26, 1981. 11 U.S.C. § 328(a). Marcus' fee request is accordingly reduced $36,732.50 for attorney charges in excess of $86.00 per hour rendering a balance of $95,285.75 for services charged. 11 U.S.C. §§ 328(a) and 330(a)(1).

Marcus has also billed for anticipated services and expenses which the Court finds to be improper future billing under 11 U.S.C. § 330(a)(1) which, as aforementioned, permits compensation only for "actual services rendered." Marcus' claim is therefore reduced by the estimated future charges included in Marcus' fee application, $4,300.00 for services and $500.00 for expenses, leaving a balance of $90,985.75 for services provided and $14,741.30 for expenses incurred.

Marcus' expenses primarily constitute billing for phone calls, xeroxing, and traveling, and appear to have been actual and necessary. It is the finding of the Court that Marcus' expenses to date should therefore be allowed in the amount of $14,741.30, as requested. 11 U.S.C. §§ 330(a)(2) and 503(b)(2).

Marcus has also billed 62.1 paralegal hours at an hourly rate of $55.00 and 13.6 attorney hours for compilation of the instant fee application. As aforementioned, it is the opinion of the Court that such services are not "rendered" on behalf of the Official Creditors' Committee, and are thus not chargeable against Debtor's estate. As an expense of doing business, Marcus' request is accordingly reduced by $4,585.10 [$3,415.50 (62.1 hours times $55.00 per hour) plus $1,169.60 (13.6 hours time $86.00 per hour)], leaving a balance of $86,400.65 for services rendered.

Straus has requested $130,000.00 for services rendered and $10,126.30 for expenses incurred. For the reasons stated above, Straus' request is reduced for attorney billing in excess of $86.00 per hour, to an amount totalling $90,712.80. Straus has also requested fees for anticipated future services and expenses which, as aforementioned, the Court believes are not compensable as "services rendered." 11 U.S.C. § 330(a)(1). Straus' request is accordingly reduced by $4,300.00 for services (the estimated 50 attorney hours times $86.00 per hour) and $500.00 for estimated expenses, leaving a balance of $86,412.80 on requested services rendered and $9,626.30 for expenses incurred. Straus has also billed approximately four hours for preparation of the instant fee application, which the Court finds not chargeable to the Debtor's estate as discussed above. Straus' charge is accordingly reduced $400.00, leaving a balance of $86,012.80 claimed for services rendered. It is the opinion of the Court that the expenses to date should otherwise be allowed as requested for reasons identical to those stated regarding the Marcus request for reimbursement of expenses.

 Of particular concern in a situation involving counselors acting jointly in a single capacity is the inherent potential for a double charge for the same service by each of the co-counsel. *Cle-Ware Industries, Inc. v. Sokolsky, supra;* and *In re Crutcher Transfer Line, Inc., supra,* at 710. A debtor's estate should not bear the burden of a duplication of services, and such duplication should be avoided by counsel on their own initiative and, if nevertheless documented by the record, disallowed by the

Court as "unnecessary" and therefore reflecting upon the *quantum meruit* value. 11 U.S.C. §§ 330(a)(1) and 503(b)(2); *Cle-Ware Industries, Inc. v. Sokolsky, supra.* In the case at bar, Marcus and Straus have applied for fees for itemized services which overlap considerably. Introductory comments for both applications indicate that both Applicants assume credit for basically identical accomplishments. A review of the Applicants' itemized records further indicates that both Applicants have charged Debtor's estate for preparation, travel and attendance at the same hearings; for a large amount of communication exclusively between co-counsel; and for review of each other's work product. It is the opinion of the Court that allowance of the instant requests without a reduction for their obvious duplications in effort would be violative of the guidelines established in *Cle-Ware Industries, Inc. v. Sokolsky, supra. In re Crutcher Transfer Line, Inc., supra.* To avoid the potential arbitrariness inherent in judicial determinations of this nature, the Court therefore will reduce each application by one-half the hours charged for exclusive correspondence and communication between the Applicants, and for travel and hearing time charged by both Applicants for identical hearings. A review of the applications indicates that forty hours is·a conservative estimate of the number of hours billed for communication (mostly phone calls) between co-counsel. Each fee request is accordingly reduced $1,720.00 for this duplication of efforts, leaving a balance of $84,292.80 for services charged by Straus and $84,680.65 for services charged by Marcus. The record also indicates that, even excluding the considerable number of hours billed for overlapping preparation, Straus and Marcus have billed approximately twenty-six and forty-one attorney hours, respectively, for travel and hearing time for appearances in the same proceedings before the Court. The Court therefore reduces each charge for these services in half, thereby reducing Straus' claim for services by $1,118.00 leaving a balance of $83,174.80 and Marcus' claim for services by $1,763.00 leaving a balance of $82,917.65.

IT IS HEREBY ORDERED that Marcus' fee application is allowed in the amount of $82,917.65 for services rendered and $14,741.30 for expenses incurred.

IT IS FURTHER ORDERED that Straus' fee application is allowed in the amount of $83,174.80 for services rendered and $9,626.50 for expenses incurred.

(7) Ira Rubin, Dayton, Ohio:

Mr. Rubin, an experienced attorney well qualified in such matters, served as Examiner since 23 March 1981 pursuant to this Court's Order in *Matter of Liberal Market,* 11 B.R. 742, 7 B.C.D. 451 (Bkrtcy.Ohio 1981). See 11 U.S.C. §§ 330(a) and 1104(b). Mr. Rubin requests allowance of $50,000.00 for 440.3 hours of service, and $1,138.67 for expenses. The Court notes that Mr. Rubin has already been reimbursed an interim fee of $10,000.00 for services and $759.96 for expenses.

It is the determination of the Court that Mr. Rubin's request should be based upon the hourly rate as fixed herein for professional legal services. Although Mr. Rubin has specifically posited the difficulty of particular legal issues raised, the Court is of the opinion that the issues addressed by the Examiner, performing an essentially non-professional position, were not of unusual complexity justifying a higher hourly rate than allowable to other applicants *sub judice.* This finding is not meant to question the quality of Mr. Rubin's services nor to reflect upon the *quantum meruit*·value of Mr. Rubin's services, which appear to have been first-rate and beneficial to the estate, particularly in regard to the antitrust issues raised. Mr. Rubin's charge for services is accordingly reduced to a $97.73 hourly rate (the discount applicable to law firms being inapplicable to an individual), leaving a balance of $43,030.52 for 440.3 hours of service. 11 U.S.C. § 330(a)(1).

Mr. Rubin's request for $1,138.67 for expenses appears to have been "actual and necessary," and the Court sees no reason to disallow it. The Court therefore allows $1,138.67 for expenses incurred by Mr. Rubin.

It is the opinion of the Court that Mr. Rubin's itemized expenses indicate that Mr. Rubin's services are properly chargeable to the estate as being within the duties of an examiner under 11 U.S.C. § 1106, except for approximately two and a half hours charged for preparation of the instant fee application. As indicated earlier, the Court believes that the calculation of fee applications is an expense of doing business not chargeable to the estate, and Mr. Rubin's request is accordingly reduced by $244.33 leaving a balance of $42,786.19. The Court notes that otherwise Mr. Rubin's services and expenses appear to have been actual, necessary and reasonable.

IT IS HEREBY ORDERED that Mr. Rubin is allowed $42,786.19 for services rendered and $1,138.67 for expenses incurred, and that Mr. Rubin should accordingly receive the balance owing in the amount of $32,786.16 for services rendered and $378.71 (for expenses incurred in excess of the amounts already reimbursed).

(8) Thomas R. Noland, Dayton, Ohio:

Mr. Noland, an experienced attorney served as Secretary to the Official Creditors' Committee. 11 U.S.C. §§ 328(a), 330(a) and 1103(a). Mr. Noland requests $4,375.00 for 52.5 hours expended and ten hours anticipated, and $131.90 for expenses incurred. It is the determination of the Court that Mr. Noland's hourly rate of $70.00 is reasonable, particularly in light of Mr. Noland's expertise in the area of bankruptcy law and the considerable number of procedural bankruptcy matters which arose in the context of his duties. It is the opinion of the Court that Mr. Noland's services and expenses appear to have been actual and necessary, and therefore properly allowable, except for the $700.00 billed for anticipated services. See 11 U.S.C. § 330(a), as discussed above. Mr. Noland's request is therefore reduced $700.00, leaving a balance claimed for services of $3,675.00.

IT IS HEREBY ORDERED that Mr. Noland is allowed $3,675.00 for services rendered and $131.90 for expenses incurred.

(9) Deloitte, Haskins & Sells (hereinafter "Deloitte") Dayton, Ohio:

Deloitte served as accountant for the Official Creditors' Committee. 11 U.S.C. §§ 328(a), 330(a) and 1103(a). Deloitte's basic function was to accumulate information regarding Debtor's real estate leases and related subleases.

Deloitte has requested $6,360.00 for eighty-six hours of service at an average hourly rate of just under $74.00. It is the finding of the Court that Deloitte's hourly rate is reasonable, considering the average local rate for accounting services. Although Deloitte's services appear to have been actual and necessary, 11 U.S.C. § 330(a), it is the opinion of the Court that Deloitte's fee application is overly general and does not adequately itemize the hours charged and the rates chargeable by the participating personnel. *In re Doyle-Lunstra Sales Corporation, supra.* In this regard, the Court notes that counsel for Debtor in Possession specifically objected to the amount of Deloitte's fee request. Although admittedly tenuous, it is the determination of the Court that Deloitte's request as presently before the Court has not been properly established and should be reduced 20%, ($1,272.00), because of the lack of verification of billing charges, and in order to reflect the *quantum meruit* value of Deloitte's services as indicated by the record. 11 U.S.C. §§ 328(a) and 330(a)(1).

IT IS HEREBY ORDERED that Deloitte's request is therefore allowed in the amount of $5,088.00 ($6,360.00 minus $1,272.00).

IT IS FURTHER ORDERED that Deloitte is granted two weeks leave to amend its application to further itemize the hourly services and that, if so amended, the above allowance may be adjusted accordingly.

(10) Alexander Grant & Company, C.P.A. (hereinafter "Alexander") Dayton, Ohio:

Alexander served as accountant for Debtor and Debtor in Possession. 11 U.S.C.

§§ 327(a), 328(a), 330(a), and 1107(a). Alexander requests allowance of $39,002.50, of which $28,035.00 has been prepaid. The Court initially notes that this request includes $3,500.00 for anticipated future services which are accordingly not allowable until "rendered," as discussed above. 11 U.S.C. § 330(a)(1). The Court also notes that Alexander's hourly billing rates, ranging from $40.00 to $95.00, appear to be reasonable.

Of more immediate concern, however, it is the determination of the Court that the Court is unable to verify the charges, as such are not itemized or detailed by the application or attachments thereto. *In re Doyle-Lunstra Sales Corporation, supra.* It is the determination of the Court that Alexander's request should accordingly be reduced twenty percent pending adjustment subject to further verification. 11 U.S.C. §§ 328(a) and 330(a).

IT IS HEREBY ORDERED that Alexander is allowed $28,402.00 (eighty percent of $35,502.50, which is the amount requested minus $3,500.00), and that Alexander should therefore receive $367.00 for the amount allowed in excess of the $28,035.00 already paid.

IT IS FURTHER ORDERED that Alexander is granted two weeks leave to amend the application to include an itemization of services charged and that, if so amended, the above allowance may be adjusted in accordance with such documentation and any further *quantum meruit* factors established conformably with 11 U.S.C. §§ 328(a) and 330(a)(1).

It is further ORDERED, ADJUDGED AND DECREED that all fee applications as allowed should be, and are hereby augmented and increased by a factor of 8% per annum on funds advanced by each applicant for actual and necessary expenses; and, the additional amount of 8% per annum on fee allowances from July 12, 1982, the date the order of confirmation was filed by the Court.