### In re N-REN CORPORATION, Debtor.

**Bankruptcy No. 1–86–00144.**

United States Bankruptcy Court, S.D. Ohio, W.D.

March 13, 1987.

**489**

See also, Bkrtcy., 71 B.R. 481.

John J. Kelley, Timothy J. Hurley, William H. Anderson, Cincinnati, Ohio, for debtor.

Eric C. Okerson, Thomas Gabelman, Cincinnati, Ohio, Thomas E. Biron, Philadelphia, Pa., for BACC.

Paul A. Nemann, Cincinnati, Ohio, I. William Cohen, Detroit, Mich., for Creditors Committee.

## DECISION AND ORDER RE OBJECTIONS TO PROFESSIONAL FEES FOR SEPTEMBER AND OCTOBER, 1986

BURTON PERLMAN, Bankruptcy Judge.

Early in the history of this case, on March 4, 1986, an order was entered entitled Order Under 11 U.S.C. § 331, Authorizing Procedure for Interim Payment of Professional Fees and Expenses. In that order, a mechanism was set up whereby professionals authorized to act in the case could make application on a monthly basis for interim fees. The order provided that by the tenth day of any month, an authorized professional could file application for interim fees, the application to be supported in the manner specified in the order, as well as in accordance with a previous order entered January 9, 1986. A copy of the statement was to be served upon counsel for the creditors committee, the debtor and Bank of America Commercial Corporation ("BACC"). Service and filing was required to be by the tenth day of the month. An application not filed by the tenth day would not be dealt with that month, though the applicant could make application in a subsequent month. Any objection to an application was required to be filed and served no later than the 24th day of the month of application. In the absence of objection, the fees applied for were to be paid. BACC is a member of, and here is representative of, a lender group which is advancing financing to the debtor and, in fact, is the source of payments to the applying professionals.

Lenders filed timely objection to professional fees by certain professionals for the months of September and October, 1986. (Other objections have been filed subsequently by lenders to further applications by professionals, but it is only the September and October, 1986 applications which are directly here in question.) The objection filed by BACC on behalf of lenders initially on October 24, 1986, and essentially repeated in subsequent objections, blanketly states that duplicative services have been rendered, that compensation is not reasonable in amount and that the services rendered were not actual, reasonable and necessary costs and expenses of preserving the estate. BACC subsequently supplemented these blanket objections in respect to each professional to which it took exception. The objections were set for hearing, but at the request of BACC the hearing was continued, and finally held January 21, 1987. Recognizing the possibility of unfairness to professionals by the delay, an order was put on authorizing disbursement by debtor of 50% of the challenged fees.

We turn now to each of the professionals whose fees have been questioned.[1]

### 1. *Hertzberg, Jacob and Weingarten.*

We deal with this fee claimant first, though the objections regarding Coopers and Lybrand, accountant for the creditors committee, were argued first. This is appropriate in order to frame the context, for the work of Coopers and Lybrand was done in response to requests of these attorneys.

For the month of September, 1986, Hertzberg, Jacob and Weingarten, P.C. (hereinafter "Hertzberg"), attorneys for the creditors committee, billed $51,026.50, seeking also reimbursement of out of pocket expenses in the amount of $4,360.33. For October, 1986 Hertzberg billed $20,-433.00 for services and $1,043.09 for expenses, for a total of $21,476.09. Recognizing that it had the burden of proof in establishing the reasonableness of compensation in connection with this application, *Matter of Liberal Market, Inc.,* 24 B.R. 653 (Bankr.S.D.Ohio W.D.1982), *In re Crutcher Transfer Line, Inc.,* 20 B.R. 705 (Bankr. W.D.Ky.1982), *In re Hamilton Hardware Co., Inc.,* 11 B.R. 326 (Bankr.E.D.Mich.1981), Hertzberg filed extensive supporting documents. These consisted of line entries on a chronological basis. For each entry, identification of the attorney appears, the number of hours, the date and a brief description of the services performed. In addition, a schedule showing time and charges for each of a number of different projects or activities appears. There is also a schedule showing the hours, rates and total fees attributable to each attorney. Finally, a schedule of categories of expenses is provided, supported by photocopies of individual vouchers stating the amount, date and purpose of each expenditure. After reviewing this material, we have reached the conclusion that what is provided by Hertzberg is sufficient to sustain its burden of proof regarding entitlement to compensation. Because the application comes to us over the signature of the attorney, and because a legal requirement is reasonableness, we believe that there is an implied representation by submitting counsel that the fees applied for are reasonable. This being the case, the burden shifts to the objector to establish that the fees are not reasonable.

While in its written Particulars of Objections, BACC sets out a number of points, at the hearing it appeared that its serious objections related to work in three areas: preference claims, affiliate claims, and the Smith-Vasiliou sale. While BACC did not dispute that each of these three areas required attention by the creditors committee, it argued that the work done, and the charges therefor, were excessive when all of the circumstances are taken into account. In respect to preferences, for September Hertzberg has charged $2,500.00, and in previous months $1,800.00. (BACC noted that in October Hertzberg charged an additional $3,750.00 on account of this item.) As to affiliate claims, for September and October, Hertzberg charged $7,900.00, and in previous months $10,-100.00, for a total of $18,000.00. As to the Smith-Vasiliou sale, Hertzberg had charged $17,800.00 prior to September, and for September and October $22,800.00, for a total of $42,000.00. BACC added together the Coopers and Lybrand charges with those of Hertzberg in respect to the affiliate claims and Smith-Vasiliou, arriving at a grand total of $36,000.00 as to affiliate claims and $67,000.00 for Smith-Vasiliou.

■ We deal preliminarily and summarily with the first point raised by BACC in its Objections. BACC argues that at the beginning of a case of any magnitude, it may be necessary that there be more than one attorney involved in the case because of all that must be done under the urgency of filing the case, but as time progresses in a case that kind of attention does not continue to be required. By the ninth or tenth month, the service of two attorneys is not needed to deal with routine matters. We find this analysis too simplistic. In a case

---

**1.** We deal here only with objections to fees requested by the attorneys for the creditors committee, Hertzberg, Jacob and Weingarten, and its accountants, Coopers and Lybrand, since BACC withdrew its other objections either at or prior to the hearing or, as was the case regarding John J. Kelley, Jr., after the matter was submitted.

of the magnitude of this one, it is not unreasonable that two attorneys, qualified and experienced, be fully familiar with and involved in the representation of the creditors committee. We do not regard such service as duplicative or unnecessary.

In the course of the hearing, we were made aware that the Smith-Vasiliou offer to purchase was a concrete proposal which had been all but finally negotiated and had been the subject of a plan which had been in fact prepared. The sale to Smith-Vasiliou aborted only at the last minute. This meant that all of the interests which had to be evaluated in connection with this significant event had to be done through completion. This fact disposes of the argument that the charges made here were inappropriate simply for the reason that they occurred in the ninth or tenth month of this Chapter 11 case. We accept Hertzberg's explanation of the involvement of multiple attorneys on this subject. That was that it was necessary to look to the expertise of various specialists in evaluating the proposed sale.

The fact of the impending sale and that it almost happened, impacts on the other items particularly discussed at the hearing. Certainly, there had to be an evaluation of preferences and affiliate claims, as well as the Smith-Vasiliou proposal from the point of view of creditors. Indeed, this kind of evaluation is the very reason for having an active creditors committee in a case such as the present. That substantial amounts of time and professional fees were incurred was simply inevitable. In view of the magnitude of the case, charges by the creditors committee and its independent accounting firm of $67,000.00 in connection with the sale to Smith-Vasiliou is not mind boggling.

We are perplexed by the BACC position on the one hand that the study of affiliate claims is something which had to be done, while at the same time saying, in effect, that it was pointless because the affiliates were insolvent. The creditors committee adequately answered the objection on this score by disclosing that the Hamilton family required as a condition to approving the then pending plan, a waiver of claims against affiliates. A solid picture of claims against affiliates was necessary to respond to this.

■ The third area emphasized by BACC at the hearing was preferences. In the months of September and October, 1986, Hertzberg charged $6,236.00 on this subject. There are, we were told, preference claims in the amount of some $2,700,000.00. Hertzberg said at the hearing, and it was not disputed by BACC, that it was agreed between debtor, lenders, and the creditors committee that the latter would do an evaluation for all interests on preferences. BACC, however, stated that it was disappointed with the product, for all it had seen was a computer run done by Coopers and Lybrand, with only a list of possible defenses. Hertzberg said, to the contrary, that each preference claim had been fully evaluated, was the subject of a separate file and was in condition to be litigated. BACC had not seen these files. At the hearing, Hertzberg suggested that it receive full compensation in regard to this item, only if resolution of the preference questions establishes that the amount then found to be involved is not disproportionate to the fee sought. We accept this suggestion and direct that compensation to Hertzberg on account of preferences be withheld pending further order of this court. We look to Hertzberg to deal with this matter by application at the appropriate time.

In its Objections, BACC addresses a number of specific items which it contends are unjustifiable in addition to the matters with which we have already dealt. These are times for preparation of minutes of the September 4, 1986 creditors committee meeting; research as to the nature of the Cardox Plant Lease Agreement; work on lien priority issues regarding Joplin. We do not find that BACC has carried its burden of persuading us that these charges are improper.

All of the objections of BACC to the fee applications of Hertzberg for September and October, 1986, are overruled, with the proviso that compensation for work on preferences be withheld at this time and allowed on subsequent applications only on

conditions consistent with this Decision and Order.

### 2. *Coopers and Lybrand.*

This accounting firm was engaged to render services to the unsecured creditors committee pursuant to order of this court dated March 3, 1986. Following the initial blanket objection, BACC filed Particulars of Objections with respect to the application of Coopers and Lybrand for the month of September, 1986. The total requested for services for September, 1986 by Coopers and Lybrand is $30,713.50. As was the case in connection with the objections to the fee application of Hertzberg, BACC in the objection to the fees sought by Coopers and Lybrand focuses on three areas of work, preferences, affiliate claims, and the Smith-Vasiliou sale.

BACC pointed out that this applicant had in previous months charged $8,800.00 in regard to analysis of preference claims, and here was seeking an additional $4,600.00 on this account, for a total of $13,400.00. On the subject of claims against affiliates, Coopers and Lybrand is seeking $8,100.00 for September, and had previously charged $10,100.00, for a total of $18,200.00. In respect to this element of the Coopers and Lybrand charge, BACC questions any benefit to the estate since all of the affiliates are insolvent. At the same time, BACC agreed that both these studies had to be done, but asserts that too much was committed to them and the charges are excessive. With respect to the Smith-Vasiliou sale, Coopers and Lybrand for September billed $12,000.00, and had previously billed $13,000.00 on this account, for a total of $25,000.00.

The work done by Coopers and Lybrand was done at the request of Hertzberg. Our analysis of the objections to the Hertzberg charges is likewise applicable to the objections to the Coopers and Lybrand charges.

Questions about certain hourly rates claimed to be excessive were settled when the order authorizing retention of Coopers and Lybrand was signed, for such rates were disclosed in the application.

The objections to the application by Coopers and Lybrand for services rendered in September, 1986 are overruled.[2]

So Ordered.

---

2. Charges for Coopers and Lybrand for services rendered after September, 1986 are not here in issue for they were not billed until December, 1986.