**In re Michael James McCLANAHAN and Jodi Valicia McClanahan, Debtors.**

**Bankruptcy No. 91–03706–8P3.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

Feb. 24, 1992.

Michael Barnett, Tampa, Fla., for debtors.

---

Chris Larimore, Bradenton, Fla., for Trustee.

## ORDER ON MOTION FOR RECONSIDERATION

ALEXANDER L. PASKAY, Chief Judge.

This Court rarely writes detailed opinions when ruling on Fee Applications filed by attorneys representing debtors in Chapter 13 cases. However, because the Motion For Reconsideration filed by the Law Firm of Isaak and Barnett (Law Firm) appears to be designed as a test case and a challenge of this Court's general approach toward fee applications in Chapter 13 cases, this Court is satisfied that it is proper to set forth some preliminary remarks before considering the relevant portion of the record in this particular case.

■ First, this Court has in the past and intends in the future to reject outright the proposition that the ruling on the Fee Application should be based on testimony of experts, and the role of the Judge considering the application is merely that of a potted plant, and if the expert testimony is unrebutted, which is almost always the case, the Judge is relegated to accept the unrebutted testimony regardless of how outrageous an amount of fees is sought by the attorney involved. This Court is unwilling to accept this proposition for the following reasons. First, under the well-recognized rules of evidence, the justification for expert testimony is to assist a trier of fact to understand the evidence. *Weinstein, 3 Evidence* ¶ 702(01) at 702–7. The Notes of the Advisory Committee on Rule 704, the Rule which deals with expert testimony, states that the term "trier of fact" is generally understood to mean the jury, e.g., untrained lay people, and does not include a Judge who is a trained professional.

The justification to consider opinion evidence from experts exists if the trier of fact is in need of assistance to help to understand an unfamiliar subject, without which assistance the trier of fact would be unable to understand the highly esoteric, technical and scientific concepts which are beyond his or her ken. Of course, it requires no elaborate discussion to point out that what is a reasonable fee to be allowed to an attorney who represents debtors in routine Chapter 13 cases is not a highly esoteric, technical, or scientific subject which a bankruptcy judge would not be able to comprehend without help and assistance of an "expert" to explain the intricacies and complex legal principles which govern allowances to attorneys representing debtors in Chapter 13 cases.

Second, if the expert testimony on the subject of what is a reasonable fee would be binding on the Court because it is unrebutted, § 329 of the Bankruptcy Code would be totally meaningless and unnecessary. Section 329 of the Bankruptcy Code provides that the Court may re-examine the fee charged, or to be charged in contemplation of bankruptcy, by an attorney, and if the Court finds that the fee exceeds the reasonable value of the services rendered, the Court may order a disgorgement. This Section is merely a restatement of § 60(d) of the Bankruptcy Act of 1898. Neither § 60(d) of the Bankruptcy Act of 1898 nor § 329 of the Bankruptcy Code requires that a party of interest seek a reexamination of the fee charged or to be charged; instead these Sections place the burden on the bankruptcy judge to make an independent determination of what is a reasonable fee charged or sought to be charged by a debtor's attorney. Thus, it is evident that a judge is not handcuffed and compelled to swallow the so-called "expert testimony" simply because such testimony is unrebutted.

Under the Bankruptcy Act of 1898, the "principle of economy," which was designed to conserve assets of the estate, was a force in determining attorney compensation in bankruptcy cases. The "principle of economy" did not compare the fees earned by bankruptcy practitioners with practitioners in other areas of the law, and there was concern that this resulted in good attorneys avoiding the practice of bankruptcy law. *See In re Liberal Market, Inc.,* 24 B.R. 653, 657 (Bankr.S.D.Oh 1982).

Congress rejected the "principle of economy" in determining fees, in part because

of the belief that attorneys and professionals serving in a case under Title 11 should be compensated at the same rate that other professionals would be compensated for performing comparable services in cases other than those under Title 11. 124 Cong. Rec. H 22,091–2 (Sept. 28, 1978); S 17,408 (Oct. 6, 1978). However, the difficulty in applying the Congressional intention stems from the fact that few services performed in cases under Title 11 are comparable to non-bankruptcy services. For example, in this case, the bulk of the legal services rendered by Barnett consists of motions to value collateral. There is no comparable procedure in non-bankruptcy cases, except possibly some type of related procedure in a foreclosure action. In sum, inasmuch as few services performed in bankruptcy cases are comparable to those performed in non-bankruptcy, it is difficult to determine a proper fee award based on the comparison Congress suggested.

In 1974, the factors to be considered by Courts when making fee awards was enunciated by the Fifth Circuit Court of Appeals in *Johnson v. George Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974). These factors were made applicable to bankruptcy cases in *Matter of First Colonial Corp. of America*, 544 F.2d 1291 (5th Cir.1977), and still apply when determining the appropriate fee for services rendered in bankruptcy cases. One of the factors in *Johnson* involves taking into consideration what is the reasonable rate charged by other attorneys in the community with similar levels of experience performing similar services in the community. The lodestar principle is also used by courts when determining a proper fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983). See also *In re Port Royal Timber Co.*, 105 B.R. 72 (Bankr.S.D.Ala 1989). The lodestar principle is based on multiplying the reasonable time spent rendering services by a reasonable rate. When applying the lodestar principle, this Court notes that the time spent for services refers to legal services, and not clerical services.

Having stated the foregoing general principles, it is appropriate in turn to consider the Motion for Reconsideration filed by the Law Firm. The original Application For Allowance of Fees filed by the Law Firm sought $1,876.00 based on 16.3 hours of services rendered by Michael Barnett (Barnett) and costs incurred on behalf of these Debtors. In the Supplement to the Application, the Law Firm sought an additional $2,070.00 based on an additional 13.3 hours of services, for a total fee award of $4,636.00. According to the schedule submitted with the Supplemental Application, this represents 4.8 hours of services rendered by Malka Isaak (Isaak) billed at an hourly rate of $200.00, and 23.3 hours of services rendered by Barnett billed at an hourly rate of $150.00. In addition, D.M. and D.H., identified as paralegals, billed for 3.4 hours and .7 hours respectively for services rendered at the rate of $40.00 for D.M. and $50.00 for D.H.

Mr. Barnett, who graduated from law school five years ago, charges an hourly rate of $150.00. While he appears to be a partner in the two-person Law Firm of Isaak and Barnett and handles several Chapter 13 cases, in light of his background and experience, his hourly rate is too high. In this Court's judgment, he certainly does not merit charging the rate other attorneys charge in this community for representing parties in major Chapter 11 cases involving millions of dollars and at times thousands of creditors, unlike this Chapter 13 case which involves only eleven creditors. This Court has pending before it several Chapter 11 cases, commonly referred to as "mega cases," i.e., Hillsborough Holdings, with its 32 subsidiaries; Bicoastal Corporation f/k/a The Singer Company; Koger Properties, Inc.; and Royster Company. All of these cases, in which some of the top bankruptcy practitioners are involved, include complex legal issues, thousands of creditors, and millions of dollars in claims. Very few of the local attorneys involved in these "mega cases" charge an hourly rate as high as $200.00, the rate charged by Isaak, and few of the associate attorneys with only five years of legal experience charge $150.00, the rate charged by Barnett. It should also be not-

ed that the services rendered in these "mega cases" require an attorney to practice on a much more sophisticated level than that which is required in a routine Chapter 13 case.

A review of the record in this case reveals that Barnett filed five Motions to Value Collateral, one Motion to Avoid Lien and one Objection to Claim. Specifically, Barnett filed a Motion to Value Collateral of Transouth, as well as an Amended Motion to Value Collateral of Transouth. Transouth filed a Response to the Amended Motion to Value Collateral, and this Court entered an Order valuing the collateral after a hearing. Barnett also filed a Motion to Value Collateral of General Motors Acceptance Corporation (GMAC), and this Court entered an Order granting the Debtors' Motion, inasmuch as GMAC filed a Response indicating they had no objection to the valuation asserted by the Debtor. The Debtor filed two identical Motions to Value Collateral of American General, and a Motion to Withdraw that Motion. Thereafter, the Court entered an Order denying the Motion to Value Collateral of American General as moot.

Barnett also filed a Motion to Avoid Lien, which Motion was granted, ex parte, and an Objection to the Claim of the IRS. After the Objection to the Claim of the IRS was filed, the IRS filed an Amended Claim to which the Debtors did not object. Thus, this Court entered an Order sustaining the Debtors' Objection to other Claim of the IRS as moot. A review of the Motions and the Objection filed by Barnett reveals that few of these matters were contested, and all are routine matters in a Chapter 13 case. None of these Motions or the Objection required extensive legal research or required great legal acumen. Inasmuch as the Motions filed in this case are nearly identical to those filed in hundreds of Chapter 13 cases, this Court finds that they are almost boilerplate documents which easily could have been produced by paralegals at a much lower hourly rate, and merely verified by the attorney for accuracy.

This Court has reviewed the claims file in this Chapter 13 case and finds that 11 claims, two of which were duplicates, were filed. The allowed amount of several of the secured claims was determined by valuation Orders, most of which were entered with no opposition. The remainder of the secured claims were allowed as filed because the Debtors had no objection to these claims.

The Court has reviewed the Schedule of Services attached to the Supplement to the Fee Application where Barnett seeks fees for an additional 13.3 hours spent rendering service for these Debtors. This Court notes that the time period covered by the Supplemental Fee Application overlaps the time period which was detailed in the first Fee Application. There is no explanation for this time overlap, and the Court cannot help but ponder whether the Supplemental Fee Application was created, in part, to simply bolster the original Fee Application and to further justify the exorbitant fee award sought in this case. The Supplemental Fee Application includes 4.8 hours spent by Isaak, 7 hours spent by Barnett, and 1.5 hours spent by D.M., the paralegal.

The 4.8 hours allegedly spent by Isaak were all spent in connection with the Motion for Rehearing on Fees. This Court notes that compensation for time spent defending a fee application on appeal has been disallowed on the grounds that it did not constitute a service reasonable and necessary to the administration of the estate, and this Court can see no reason why time spent on a Motion for Rehearing of a fee award should be accorded different treatment. See *Grant v. George Schumann Tire & Battery Co.*, 908 F.2d 874, 882–83 (11th Cir.1990), citing, *In re Temple Retirement Community, Inc.*, 97 B.R. 333, 338 (Bankr.W.D.Tex.1989). Isaak had a 1.5 hour conference with L. Miller regarding hearing on Fee Application; however, this Court has no idea who L. Miller is and what his connection is to this case. Isaak also had conferences totalling 1.9 hours with Robert Vaughn and Ian Horn, the attorneys called as "expert witnesses" to explain this Fee Application during the Motion for Rehearing. Finally, Isaak billed 1.4 hours to prepare for and attend the

hearing on the Fee Application. This Court finds little justification for Isaak to spend nearly 5 hours in conference with attorneys regarding the Law Firm's Fee Application, especially when the testimony of these "experts," as noted earlier, was not necessary to enable this Court to understand what is a reasonable fee in a Chapter 13 case.

In support of the Supplemental Application, the Law Firm presented two "experts," Mr. Ian Horn, an attorney who has an extensive bankruptcy practice, and Mr. Robert Vaughn, who is also a practicing attorney, although his appearances before this Court have been rare. Mr. Vaughn does not profess to be an expert in bankruptcy, and it appears that his practice is primarily in the area of real estate law. Mr. Vaughn was admitted to practice law in 1986, and Mr. Horn in 1985. Both "experts" stated that in their expert opinion, the fee sought by the Law Firm is more than reasonable.

This Court is constrained to reject the testimony of these experts for several reasons. First, the testimony of Mr. Horn is obviously self-serving because if it is accepted, it certainly would be used by Mr. Horn as a precedent when his law firm files a fee application in Chapter 13 cases. The testimony of Mr. Vaughn lacks persuasive force because as noted earlier, his practice is basically limited to representing creditors in foreclosure matters in non-bankruptcy forums. This leaves for consideration the ultimate question, which is what is the reasonable amount to be awarded to the Law Firm in this Chapter 13 case.

The Law Firm also filed a Memorandum of Law on Attorney Fees, although no such Memorandum was requested by this Court, and this Court assumes that any attorney who practices regularly before this Court is aware that the policy of this Court is to not accept an unsolicited Memorandum of Law. Nevertheless, a review of the Memorandum reveals that the Law Firm relies heavily on the principle that the reasonableness of attorney's fees is to be determined by a bankruptcy court by considering Florida Law, which provides that attorneys are entitled to be compensated at the rate agreed upon in their contract. *Solar Research Corporation v. Parker,* 221 So.2d 138, 142 (Fla.1969). Of course, it is quite obvious that Florida case law is not appropriate authority to be considered by this Court when determining what is a reasonable fee charged by an attorney representing a Chapter 13 debtor. The Law Firm also urges that fee enhancement should be considered if the case is successful. See *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292 (11th Cir. 1988). This Court has difficulty proclaiming that this Chapter 13 case, which includes only eleven secured creditors, is a success by any stretch of the imagination which merits fee enhancement.

It cannot be seriously disputed that to permit an attorney to charge nearly $5,000.00 for representing a Chapter 13 debtor whose Chapter 13 Plan is designed solely to cure arrearages on the home mortgage and to pay secured creditors in full, and to pay at most 20% to unsecured creditors, or a maximum of approximately $1,000.00 on unsecured claims estimated at $5,000.00, would be less than reasonable, especially when there is no extensive, complex, serious litigation in the case. According to the *American Bankruptcy Institute National Report on Professional Compensation in Bankruptcy Cases* (G.R. Warner rep.1991), the mean fee maximum in Chapter 13 cases is $845.00, and both the median fee and the mode fee are $750.00. One quarter of the attorneys surveyed reported an average fee in routine Chapter 13 cases of $600.00 or less, and 42% of the attorneys reported a maximum fee in Chapter 13 cases of $750.00 or less. These figures lead the Court to conclude that the fees sought in this Chapter 13 case are grossly excessive.

In sum, this Court has no doubt that this was nothing but a routine Chapter 13 case, and involved nothing but Motions that could have been easily prepared by a paralegal and one Objection that has been used previously in hundreds of Chapter 13 cases.

As noted earlier, this case involved no contested litigation. Most of the issues were determined by agreement, or by de-

fault. Thus, even if the hours stated were actually spent by Barnett and Isaak, a Chapter 13 case of this nature certainly does not merit an award of $4,626.00. Based on the following, the hourly rate of $150.00 charged by Barnett, based on his experience and compared with the hourly rate charged by other attorneys in the country, should not exceed $135.00. Further, the hourly rate of $200.00 charged by Isaak is equally inflated, especially when compared with the hourly rate charged by other attorneys in this community with substantially greater experience and who deal with much more complex issues, and should not be more than $175.00. Applying the lodestar principle in multiplying these amounts with the time reasonably spent on the services rendered, none of which really required any special skill or extensive research, the fee to be allowed in this Chapter 13 case shall not be more than $1,500.00.

Accordingly, it is

ORDERED, ADJUDGED AND DE-CREED that the Motion for Reconsideration be, and the same is hereby, granted and the previous fee award of $800.00 is amended to provide that the Law Firm of Isaak and Barnett is awarded fees in this Chapter 13 case in the amount of $1,500.00.

DONE AND ORDERED.