**In re PACIFIC EXPRESS, INC., Debtor.**

**In re PACIFIC EXPRESS HOLDING, INC., Debtor.**

**Bankruptcy Nos. 284–00394–D–11, 284–00395–D–11.**

United States Bankruptcy Court, E.D. California.

Dec. 31, 1985.

Law Offices of Stroock & Stroock & Lavan by Brent A. Whittlesey, Los Angeles, Cal., for debtors.

## MEMORANDUM OPINION AND DECISION

LOREN S. DAHL, Bankruptcy Judge.

### FACTS

On February 2, 1984, voluntary petitions for relief under chapter 11 Title 11 U.S. Code, [Bankruptcy Code] were filed by Stroock & Stroock & Lavan, hereinafter S & S & L, on behalf of the above named debtors. S & S & L is a law firm whose principal office is in New York with other offices in Washington, D.C., Miami and Los Angeles. On April 24, 1984, S & S & L filed its application for Interim Compensation (attorney fees) and Reimbursement of Expenses together with a supplemental description of services filed May 21, 1984, and at the court's request, a letter dated June 18, 1984, with exhibits attached further explaining the nature and dates of certain expenses incurred. The application and supplement request the allowance of $94,853.00 as and for attorney's fees and $16,662.17 as reimbursement for expenses incurred, all of which are for the period of January 30, 1984 through March 28, 1984.

S & S & L filed on February 21, 1984, an application to appoint its law firm as attorneys for the debtors and in its application stated that except as stated in the accompanying declaration of Brent A. Whittlesey, an associate of S & S & L, it represents no interest adverse to the debtors or their chapter 11 estates. The Whittlesey declaration states that several partners of S & S & L have invested in the debtor corporations, namely, Marvin S. Cohen, a member of the Board of Directors of Pacific Express and corporate secretary of both debtors, Erwin Millimet, Charles Hochman and Robert M. Safton, all of whom were parties to a participation agreement of April 18, 1983 with Pioneer Commercial Funding Corporation, both debtors and a number of participants. On information and belief, Mr. Whittlesey stated their total investment to be $75,000.00 and that they owned 101,775 shares of Pacific Express Holding, Inc.

The order approving the retention of S & S & L as debtors' counsel was submitted with the application and contained the language "the court is satisfied the matter set forth does not constitute an interest adverse to debtors or their estates". The order was granted as submitted.

At the hearing of the instant application, the unsecured creditors' committee, hereinafter committee, objected to the allowance of any amounts whatsoever to applicant on account of attorney's fees or for costs advanced on two principal grounds, conflict of interest and grossly excessive charges. Pioneer Commercial Funding, Inc., a creditor, concurred with the argument of the committee.

### CONFLICT OF INTEREST

The committee urges that the principles enunciated by this court, *In re B.E.T. Genetics, Inc.*, 35 B.R. 269, 11 B.C.D. 845, 9 C.B.C.2d 1346 (E.D.Calif.1983), should be applied in this matter and thus ruling out any allowances whatsoever to S & S & L. This court believes, however, that on the

facts *B.E.T. Genetics, Inc.* is distinguishable. First, in *B.E.T. Genetics, Inc.*, the law firm involved in its application for appointment as debtors' counsel declared that neither it nor its partner(s) have any interest which will be adverse to the interests of the debtor other than being a creditor for prepetition legal services. In fact, one of the partners owed substantial sums of money to the debtor, was an investor in an affiliated partnership of the debtor, and was an officer of the debtor. These insider involvements not only gave the appearance of impropriety but constituted a clear conflict of interest and moreover were not disclosed to the court at the time of the application to become counsel for the debtor. In the instant case, S & S & L did make known with its application the involvement of several of its partners as heretofore set forth but nothing has been thus far presented to the court to suggest, much less prove, that S & S & L had any reason to believe on February 21, 1984, that it had any conflict of interest or potential conflict with debtor or that it was not disinterested as that term is used in 11 U.S.C. 328(c). Notwithstanding, the court recognizes that the Section 328(c) grants the court power to deny allowances of compensation for services and reimbursement of expenses of a professional person if not a disinterested person or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such person is employed. The statute makes no limitation nor exception and may be harsh on a violator as the legislative history suggests was the intent of Congress.

■ This court believes that where the professional, without concealment, applies for appointment in good faith believing that it is disinterested and without conflict of interest, the court should not impose a denial of allowances and expense reimbursement on that basis alone, when after discovered facts reveal an interested person status or a conflict of interest with the debtor. In the instant case, the applicant withdrew as debtors' counsel upon learning of the intended adversary proceeding to be taken by the committee against Pioneer and its participants.

## THE CONTROLLING LAW

Sections 329 and 330 of the Bankruptcy Code govern the review of compensation paid to debtors' attorneys. Section 329 requires compensation paid to debtors' attorneys to be reasonable. 11 U.S.C. Sec. 329(b). 2 Collier on Bankruptcy, Par. 329.04, at 329–14 (L.King 15 ed. 1979). (hereinafter cited as Collier). In pertinent part, Section 329 states:

(a) Any Attorney representing a debtor in a case under this title or in connection with such a case, ..., shall file with the court a statement of the compensation paid or agreed to be paid, ..., for services rendered or to be rendered in contemplation of and in connection with the case by such attorney and the source of such compensation.

(b) If such compensation exceeds the reasonable value of any such services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive, to—

(1) the trustee, if the property transferred—(A) would have been property of the estate; or

(2) the entity that made such payment.

Section 329(a) is derived from former Bankruptcy Rule 219(b) while 329(a) is derived from former Bankruptcy Rule 220; both subsections of Section 329 are substantially similar to their predecessor rules. 2 Collier, Par. 329.02, at 329.5. *In re J.J. Bradley & Co., Inc.*, 6 B.R. 529, 533 (Bankr.E.D.N.Y.1980). Section 329 reflects Congress' concern that payments to debtors' attorneys could jeopardize the relief accorded to creditors and could encourage overreaching by debtors' attorneys. 11 U.S.C. Sec. 329 (Legislative History Collier Pamphlet Edition 1983).

Courts must scrutinize the fees and expenses paid to debtors' attorneys to

determine whether the compensation is reasonable. Id. See also 2 Collier, Par. 329.02, at 329.4, Par. 329.03, at 329.12, Par. 329.04, at 329.13. *In re Yermakov,* 718 F.2d 1465, 1469 n. 8 (9th Cir.1983). To the extent that compensation is unreasonable, the court may order the fee returned to the bankruptcy estate or to the payor. 11 U.S.C. Sec. 329(b).

Section 330 provides the criteria by which courts measure the reasonableness of compensation paid to debtors' attorneys. 2 Collier, Par. 329.04, at 329–14. In pertinent part, Section 330 states:

(a) After notice to any parties in interest ..., and subject to Section 326, 328 and 329 of this title, the court may award ... to the debtor's attorney—

(1) reasonable compensation for actual, necessary, services rendered by such ... attorney, ..., and by any para-professional persons employed by such ... attorney, ..., and the value of such services, and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses.

Except for the rejection of the strict principle of economy of administration, Section 330's criteria for fixing attorneys' fees is identical to the criteria of the former Bankruptcy Act. *In the Matter of Hamilton Hardware Co., Inc.,* 11 B.R. 326, 329 (Bankr.E.D.Mich.1981). 2 Collier, Par. 330–05, at 330–17. Section 330 limits compensation to debtors' attorneys and to other professional persons to a reasonable amount for *actual* services that are *necessary* to the bankruptcy case. 11 U.S.C.A. Sec. 330(a) (emphasis added). *In re Yermankov,* 718 F.2d 1465, 1470 (9th Cir.1983).

Determining the reasonableness of an attorney's compensation is a difficult task which is not easily reduced to a mathematical formula. *In the Matter of Multiponics Incorporated,* 622 F.2d 731, 735 (5th Cir.1980). *In re Warrior Drilling & Engineering Co., Inc.,* 9 B.R. 841, 847 (Bankr.N.D.Ala 1981), modified 18 B.R. 684 (N.D.Ala.1981). *In the Matter of Hamilton Hardware Co., Inc.,* 11 B.R. 326, 333 (Bankr.E.D.Mich.1981). The review of attorneys fees and expenses is within the discretion of the court, *Arenson v. Board of Trade City of Chicago,* 372 F.Supp. 1349, 1351 (N.D. Ill.1974), and the court, on a case-by-case approach, will apply the factors set forth below to arrive at a reasonable allowance. *In the Matter of D.H. Overmyer,* 3 B.R. 678, 686 (Bankr.S.D.N.Y.1980).

Reasonable attorneys fees and expenses are measured by the factors set forth in *Johnson v. Georgia Highway Express, Inc.* 488 F.2d 714 (5th Cir.1974). *Johnson* involved attorney compensation under the Civil Rights Act of 1964, 42 U.S.C. Section 2000e–5(k), but its factors apply to bankruptcy cases. *Rose Pass Mines, Inc., v. Howard,* 615 F.2d 1088, 1091 (5th Cir.1980). *Matter of First Colonial Corp. of America,* 544 F.2d 1291, 1299 (5th Cir.1977). *In re Warrior Drilling & Engineering Co., Inc.,* 9 B.R. 841, 848 (Bankr.N.D.Ala.1981). *In re Lloyd, Carr & Co., v. Abrams,* 2 B.R. 714, 717 (Bankr.D.Mass.1979). *In re Pacific Homes,* 20 B.R. 729, 736–737 (Bankr.C.D.Cal.1982). 2 Collier, Par. 330.05, at 330–17–18. See also Butenas, Establishing Attorney's Fees Under the New Bankruptcy Code, 87 Comm.L.J. 237, 238 (1982). The factors specified in *Johnson* are:

(1) The time and labor required;

(2) The novelty and difficulty of the questions;

(3) The skill requisite to perform the legal service properly.

(4) The preclusion of other employment by the attorney due to acceptance of case;

(5) The customary fee;

(6) Whether the fee is fixed or contingent;

(7) Time limitations imposed by the client or the circumstances;

(8) The amount involved and the results obtained;

(9) The experience, reputation, and ability of the attorneys;

(10) The "undesirability" of the case;

(11) The nature and length of the professional relationship with the client; and

(12) Awards in similar cases.

*Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 717 to 719. ¶ This court will apply the *Johnson* factors to the instant case [by grouping the factors as they appear in this case].

Group A are factors (4) preclusion of other employment, (6) fixed or contingent fee, (10) undesirability of the case and (11) nature and length of the professional relationship with the client. No showing has been made as to any of these factors which would suggest a fee enhancement nor can the court conceive of the existence of any from the files and documents on file. The applicant employed was on a general retainer basis subject to court approval as to the necessity and reasonableness of the charges.

Group B are factors (2) novelty and difficulty of the questions, (3) skill requisite to perform the legal service properly, (7) time limitations imposed and (9) experience, reputation and ability of the attorneys. These group B factors overlap and are interdependent. The practice of bankruptcy law is a specialty in itself and within that area, the competent handling of chapter 11 reorganizations requires an even greater specialization. The attorney who assumes the role of debtor's counsel in a chapter 11 case should expect that difficult and novel questions will be raised, that numerous matters will need prompt attention and, to service his client effectively such attorney must have the necessary skills and time to perform the tasks with which he is confronted. To do this, such attorney must know and understand the law of bankruptcy as well as the applicable state law. Awareness of general business principles is likewise essential. These skills come about through years of study and actual experience and entitle the competent reorganization specialist in bankruptcy to a greater fee rate

than that customarily charged by general practitioners. Of the partners and associates of S & S & L who billed time charges, herein, only Ms. Kaplan and Mr. Whittlesey appeared in this court. Ms. Kaplan clearly fits the pattern of the competent reorganization specialist in bankruptcy law. Mr. Whittlesey appears not to have yet reached that plateau. The court can make no conclusion as to the remainder of the S & S L attorneys mentioned in the fee application but must use its own expertise as an attorney and as a judge to assess the debtors' attorneys' work product, preparation, and ability. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 718. *In the Matter of First Colonial Corp. of America,* 544 F.2d at 1300.

Group C factors are (1) the time and labor required, (5) the customary fee, (8) amount involved and results obtained and (12) awards in similar cases. These factors are, in this particular case, the most important of the *Johnson* factors to consider.

As stated heretofore, S & S & L served as debtors counsel for approximately two months when they withdrew. The application reveals 19 different attorneys billed 526.5 hours at rates from $100.00 to $270.00 per hour for a total of $90,074.20. In addition, three paralegals billed 152.5 hours at hourly rates of $29.00, $48.00 and $75.00 per hour for a total of $4,507.00. The average rate of the attorney hours billed is $171.08 and the average rate of the paralegals is $29.55. The total billings are $95,074.20 or $220.80 more than that requested in the application.

In the instant case, applicants' attorneys repeatedly duplicated their efforts. More than one attorney did work which easily could have been done by one attorney, and on numerous occasions two or more attorneys participated in the same meeting or phone call. Every minute of each attorney's time throughout this duplication of effort was billed at from $100.00 per hour to $270.00 per hour. Exhibit A to the application is replete with telephone conferences, most of which involved other attorneys of this firm resulting in as many as

four time clocks running simultaneously against the debtors' account. The legal fees generated with 19 different attorneys billing from time to time throughout the two-month period averaged more than $2,000 per normal work week.

A prime example of such uncontrolled billing is for the six-day period of February 3, 1984 through February 8, 1984. Fees billed by S & S & L attorneys were as follows:

| Name | Hours | Amount |
|------|-------|--------|
| Kruger | 2.9 | $ 783.00 |
| Kaplan | 71.5 | 12,512.50 |
| Whittlesey | 55.5 | 9,268.50 |
| Cohen | .5 | 110.00 |
| Whalper | 1.0 | 118.00 |
| Umansky | 2.3 | 529.00 |
| Rudser | 11.0 | 1,298.00 |
| | 144.7 | $24,619.00 |

This averages $170.14 per attorney hour. Add to that $2,319.14 in expenses incurred for air fares, hotels, meals, tips, taxis, rental car, movies, lunch for a secretary and a valet and even an attorneys admission fee charged for the Eastern District of California, plus word processing charges of $648.00, plus long distance telephone charges too numerous to count (241 calls since counted), and one begins to wonder as to who was working for whom. Suffice it to say that the time and labor reasonably required for this chapter 11 reorganization effort was substantially overstated by reason of the duplication of time and efforts by the various attorneys and paralegals of the applicant.

The fifth factor is the customary fee. The court must consider the usual fee charged by attorneys for similar work within the community. *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d at 718. *In re Yermakov*, 718 F.2d at 1471. Courts which have addressed this factor have considered comparable fees in other bankruptcy cases within the district and within the period in question, *In re Lloyd, Car .& Co.*, 2 B.R. at 717, *In re G.W.C. Financial & Insurance Services, Inc.*, 8 B.R. [122] at 125 [ (C.D.Cal. 1981) ], and the rate normally charged by the debtor's attorney in non-bankruptcy

cases. *In re Yermakov*, 718 F.2d at 1471. Although not required, expert testimony may establish the customary fee within the locality. *In re G.W.C. Financial & Insurance Services, Inc.*, 8 B.R. at 125.

What then in the case as at bar, where the debtor employs a firm whose principal office is in New York; whose California office is in Los Angeles and whose attorneys based in the New York office bill most of the hours? As was so well stated by Judge Britton in *In re Interstate United Electronic Sales Co.*, 44 B.R. 784, 11 C.B.C.2d 1179, 1180, B Ct SD Fla, (1984).

"A litigant has a right, of course, to select any attorney he wishes. An attorney has an equal right to represent any client he wishes. If, however, a firm located 1,500 miles away from the situs of the bankruptcy accepts representation, and if there is adequate representation available at the situs and no compelling need for this special counsel, the attorney cannot expect to be compensated at more than the prevailing rate for available, local counsel of comparable experience and ability. Nor can he expect to be compensated for travel. It is his responsibility to advise his client that only the reasonable expense of representation is authorized from the estate on the eve of bankruptcy ... *Matter of Multiponics, Inc.*, 622 F.2d 731, 734 (5th Cir.1980)."

The customary fee charged by competent bankruptcy specialists in the Sacramento division of the Eastern District of California for a chapter 11 bankruptcy case such as the instant case is from $100.00 to $150.00 per hour with the latter rate being reserved for the senior partner with many years of experience in this area of specialization. There were and are numerous attorneys practicing in Sacramento and the surrounding area, not to mention San Francisco and Oakland, only 100 miles distant who possess the skills and knowledge necessary for the proper and effective representation of this debtor and whose hourly rates would be commensurate with the

amounts above cited. In fact, one such lawyer succeeded S & S & L as debtor's counsel when they withdrew.

The amount involved and the results obtained comprise the eighth factor considered in this case. Courts assessing this factor consider the benefit accorded to the bankruptcy estate by the attorneys' services. Matters such as the size and value of the estate are important in this factor. *In re Warrior Drilling and Engineering Co., Inc.*, 9 B.R. at 850. *In re Grady*, Bankr.L.Reptr. (CCH) at 76,-883. *In re Quick Release, Inc.*, 6 B.R. 713, 716 (Bankr.D.S.D.1980).

Debtors' case was not unusually complicated although it did require motions to use cash collateral as is typical in many reorganizations but did not result in extraordinary benefits for the debtors or their creditors ...

The twelfth factor considered by this court is awards in similar cases. This factor is virtually identical to factor number five (5), the customary fee, and the court defers to its treatment of that factor. The compensation requested by S & S & L cannot be justified under the Group C factors.

### EXPENSES INCURRED

S & S & L request reimbursement for expenses incurred in the total sum of $16,-662.17 for the two month period comprised of the following:

| | |
|---|---:|
| Secretarial Overtime Charges | $ 589.54 |
| Fares, Taxis and Parking | 683.05 |
| Travel Expenses and Car Rentals | 11,793.54 |
| Outside Secretarial Services | 232.00 |
| Outside Printing Costs | 748.41 |
| Word Processing | 648.00 |
| Duplicating Charges | 515.76 |
| Postage and Messenger Service | 258.36 |
| Long Distance Telephone | 1,193.51 |
| | $16,662.17 |

■ Section 330(a)(2) provides that the court may award reimbursement for actual necessary expenses. Whether an expense is necessary, is conditioned on whether the item for which the expense was incurred was reasonably needed to accomplish proper representation of the client, here the debtor.

■ Expenses so labeled which are a part of the usual and ordinary expenses of an attorney in his practice are not separately reimbursable, for these constitute his overhead or cost of doing business and are taken into account in determining his hourly rate or the fixed fee for performing a specific legal service. These include rent, secretarial salaries and benefits, stationery, postage, law books, typewriters, filing cases, word processors, office furniture and other equipment, electricity, telephones, and others. Expenses not customarily a part of the attorneys overhead must be shown as reasonably necessary to properly represent the client.

■ In the instant case, the focal points of the activity were Chico, California where the debtors' principal offices were situated, Sacramento, California, where the bankruptcy court having venue over Chico was located, and possibly San Francisco, where several large creditor entities did business. Instead of employing available competent chapter 11 attorneys from Sacramento or San Francisco whose travel expenses would have been nominal, a New York firm with a Los Angeles branch office was selected. The exhibits attached to the application shows that Ms. Kaplan (based in New York) would fly to Los Angeles or San Francisco where she would meet Mr. Whittlesey (based in Los Angeles) and together they would go to San Francisco, Sacramento and/or Chico, and after a few days they would return to their home office in New York or Los Angeles. During these travel days, not only did the air fare continue to mount, but so too the taxis, car rentals, tips, transportation to and from airports, meals, hotel rooms, delivery service and a host of long distance calls, most of which were back to the New York office of S & S & L. Such expenses were simply not justified and cannot be reimbursed from the estate any more than can the $175.00 per hour fees billed by Ms. Kaplan while flying from New York to California and return.

## CONCLUSION

"... Uncertainties that arise because of poor records should be resolved against the applicant." *New York State Association for Retarded Children, Inc. v. Carey*, 544 F.Supp. 330, 338 (E.D.N.Y. 1982). (Citations omitted). The opinion continues: "Lack of documentation is not an evil in itself, but it creates problems precisely to the extent that it makes the court's task of determine the reasonableness of time claimed very difficult." *Id.* at 339.

What the Court must avoid is allowing a double charge for the same service where attorneys are acting jointly in the same capacity. *Cle-Ware Industries, Inc., v. Sokolsky*, 493 F.2d 863 (6th Cir. 1974); *In re Crutcher Transfer Line, Inc.* 20 B.R. 705, 710 (Bkrtcy W.D.Ky. 1982). The debtor's estate should not bear the burden of duplication and if not avoided by counsel it should be disallowed by the court. *In re Liberal Market, Inc.*, 24 B.R. 653, 658 [9 B.C.D. 1216] (B.C.S.D.Ohio 1982). In a case involving multiple attorneys and a large number of claimed hours an across-the-board reduction is a necessary, but fair, expedient to correct for excessive or duplicative hours.

Furthermore, not all services should carry the same compensation. Correspondence and telephone conversations, unless the substance is set forth, should be compensated at a lower rate than truly legal services irrespective of the experience and competency of the attorney who performs them. *In re Doyle-Lunstra Sales Corp.*, 19 B.R. 1003 (B.C. 7th So.Dak.1982); *In re Hamilton Hardware Co.*, 11 B.R. 326, 331 [7 BCD 963] (B.C.E.D.Mich.1981); *In re Sapolin Paints*, 38 B.R. 807, 11 B.C.D. 875, 10 C.B.C. 833 (E.D.N.Y.1984).

Determining the reasonableness of Debtors' attorneys' fees is a very difficult and delicate task. The court has carefully considered all the evidence, the bankruptcy file, and the twelve *Johnson* factors, and concludes that an across-the-board reduc-

tion is a necessary and fair expedient to correct for excessive hourly rates, duplicative hours billed and services that were not reasonably necessary including but not limited to charges for travel time to and from New York, Los Angeles and Northern California.

■ The court is satisfied that had competent local counsel been employed as debtors' counsel it is inconceivable that more than an average of 40 attorney hours per week would have been expended for the proper representation of the debtors. This would amount to 320 hours for the eight week period at an average hourly rate of $125.00 ($100.00 to $150.00 per hour) totaling $40,000.00.

## EXPENSES INCURRED

■ Because they are part of an attorneys customary overhead, secretarial overtime—$589.54, word processing—$648.00, duplicating charges—$515.76 and postage/messenger services—$258.36, are disallowed. Travel expenses which related to air flights by Ms. Kaplan and Mr. Whittlesey as aforesaid and car rentals simply were not reasonably necessary and would not have been incurred had local counsel been employed except possibly for a few trips to Chico and San Francisco. Accordingly, $400.00 will be allowed for this category. Fares, taxis, and parking mostly related to the Kaplan-Whittlesey trips will be disallowed except for $200.00 which will be allowed as the estimated expense for local counsel needs in this category. The outside secretarial services—$232.00 and outside printing costs—$748.41 appear proper regardless of locale of counsel. The long distance telephone charges would not have exceeded $300.00 if local counsel had been employed. These allowed expenses total $1,880.41. It must be kept in mind that we are here dealing with expenses for slightly less than two months.

In the 36 years as a lawyer and judge specializing in bankruptcy law, this is one of the most blatant examples of attempted fee gouging observed by this court.

A separate order will be entered allowing attorneys fees and expenses consistent herewith.

IT IS SO ORDERED.