**In re MICROWAVE PRODUCTS OF AMERICA, INC., Debtor.**

**Bankruptcy No. 88–27990–D.**

United States Bankruptcy Court,
W.D. Tennessee, W.D.

March 10, 1989.

Clifton Smith, Los Angeles, Cal., Harris Quinn, Memphis, Tenn., for debtor.

David Cocke, Memphis, Tenn., for Litton Industries.

Jack F. Marlow, Memphis, Tenn., for AUIC.

John Ryder, Memphis, Tenn., Steve Douglas, Memphis, Tenn., for First Interstate Bank.

Hank Shelton, Memphis, Tenn., for Western Industries.

Michael Coury, Laughlin, Halle, Gibson & McBride, Memphis, Tenn., for Unsecured Creditors Committee.

Brent A. Whittlesey, Jones, Day, Reavis & Pogue, Los Angeles, Cal., for Microwave Holdings.

Richard Gossett, Chattanooga, Tenn., for Microwave Products of America.

Julie C. Chinn, Asst. U.S. Atty., Memphis, Tenn.

Jennie Latta, Memphis, Tenn., for MagnaTek, Inc.

## MEMORANDUM OF OPINION AND ORDER ON APPLICATION OF DEBTOR'S PART–TIME COUNSEL FOR INTERIM ALLOWANCE OF ATTORNEY'S FEES AND REIMBURSEMENT OF EXPENSES, AND OBJECTIONS THERETO

BERNICE BOUIE DONALD, Bankruptcy Judge.

The Court has before it for consideration the above-styled core proceeding.[1] The debtor filed an application to hire part-time counsel pursuant to 11 U.S.C. § 327(a) and Bankruptcy Rule 2014. The application was approved and an order entered November 25, 1988. Pursuant to 11 U.S.C. §§ 328–331, the part-time counsel now submits this application for compensation, including services rendered prior to the November 25, 1988 order. Litton Industries, Inc., a creditor in the case, has requested the Court to set aside the order authorizing appointment of part-time counsel, and further asks the Court to deny any and all compensation. Litton, objects to the appointment of Smith as attorney on the alleged grounds that Smith holds an interest that is adverse to the debtor, and which constitutes an actual conflict of interest. Litton further argues that Smith is not "disinterested" within the meaning of 11 U.S.C. § 101(13).

Additionally, the U.S. Trustee objects to the rate charged alleging that "the rate is apparently a California rate, and not a rate which is common to this locale". The U.S.

1. See 28 U.S.C. § 157(b)(2)(A).

Trustee also objects to Smith's full hourly rate for time spent in travel which total 21.5 hours for a total of Four Thousand Eight Hundred Seven Dollars and Fifty Cents ($4,837.50).

Further, the U.S. Trustee objects to approximately 17.5 hours for time spent conferring with other attorneys and reviewing other attorney's pleadings.

A hearing was conducted and the Court issues the following findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

The questions before the Court are:

1) Where debtor's part-time counsel meets the criteria for employment under 11 U.S.C. § 327(a)?

2) Whether part-time counsel's application and order may be entered Nunc Pro Tunc? and,

3) Whether counsel's fees are reasonable?

## BACKGROUND FACTS

The debtor, Microwave Products of America, Inc., filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. The debtor, a national corporation with offices in Sioux Falls, South Dakota, and principal offices in Memphis, Tennessee has some 900 employees.

The debtor in the instant case filed a voluntary petition October 28, 1988, and hired local counsel in Memphis, Tennessee immediately.[2] Subsequently, upon application of the debtor to employ part-time counsel, the Court approved the employment of Clifton S. Smith, Jr., by order dated November 25, 1988. Mr. Smith is a licensed attorney currently practicing law in the State of California. The application and order were submitted by debtor's Memphis counsel, but did not request that it be entered Nunc Pro Tunc.

Counsel's fee application seeks compensation and reimbursement for the period of October 28, 1988 through December 1988 for a total of 159.8 hours of professional services at an hourly rate of Two Hundred Twenty-five Dollars ($225.00), and expenses totaling One Thousand Twelve Dollars and Fifty-one Cents ($1,012.51).

## DISCUSSION

A trustee may employ attorneys and other professional persons to represent or perform services for the estate.[3] A debtor-in-possession has virtually all the same powers and duties of a trustee.[4] The Bankruptcy Code requires that the professional person employed be disinterested and not represent any interest adverse to the estate.[5] The Code provides a limitation that the professional person's work not be duplicative, and that it be performed to benefit the estate.[6]

Bankruptcy Rule 2014 holds in pertinent part:

(a) **Application for and Order of Employment.** An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 or § 1103 of the Code shall be made only on application of the trustee or committee, stating the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all

2. Debtor is represented locally by the firm of Heiskell, Donelson, Bearman, Adams, Williams, and Kirsch, 20th Floor, First Tennessee Building.

3. 11 U.S.C. § 327(a).

4. 11 U.S.C. § 1107(a) states:
 (a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the Court pre-

scribes, a debtor-in-possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

5. 11 U.S.C. § 327(a).

6. 11 U.S.C. § 327(e), see *In re Matter of Codesco, Inc.,* 18 B.R. 997 (Bankr.S.D.N.Y.1982).

of the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants. The application shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants.

 As a general rule, a trustee may select his own attorney without interference from creditors. 2 *Collier on Bankruptcy* § 327.03–2 (15th 1988). While the Code requires that the attorney be disinterested, 11 U.S.C. § 327(c) expressly states that an attorney is not disqualified for employment solely because of having previously represented a creditor. Trustees, hence debtors-in-possession, are given great leeway in selecting attorneys within the parameters of the relevant Bankruptcy provisions.

 11 U.S.C. § 327(e) states in relevant part:

(e) The trustee, with the Court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

While section 327(e) seemed to carve out an exception for special counsel, which arguably Mr. Smith was, the Code specifically requires that the attorney not hold any adverse interest with respect to the estate.[7] In the instant case the attorney set forth convincing reasons to justify employment, and further avers that he has provided valuable assistance and benefit to the estate. The attorney in his application, subsequent sworn declaration, and testimony in open Court, has steadfastly denied holding any interest adverse to the debtor-in-possession. The Court is so persuaded.

Litton Industries argues that Smith, in fact, holds an interest adverse to the debtor. In support of its position, Litton argues that Smith represented Microwave Holdings, Inc. (MHI), the parent company of the debtor, and its principal shareholder. Litton further avers that Smith has been involved in ongoing transactions between MHI, the debtor, and certain foreign prospects, and that such dual representation results in an actual conflict. Certainly such a situation, if not giving rise to an actual *per se* conflict, is a potential conflict, and has the appearance of a conflict of interest.

However, under extensive cross-examination, part-time counsel has refuted most of the allegations of Litton to the satisfaction of the Court. More importantly, Mr. Smith has terminated his relationship with debtor, so there can be no continuing allegation of conflict.

The more serious question for the Court is whether the attorney is "disinterested", and, therefore eligible to be employed under section 327(a) of the Bankruptcy Code. Section 1107(a) of the Bankruptcy Code makes the debtor-in-possession, subject to the general rules of the Code as to hiring attorneys for the bankruptcy estate. Further, under section 327(a), the trustee may employ only those professional persons that do not have an interest adverse to the estate, and who are disinterested.

While 11 U.S.C. § 101(13)[8] defines "disinterested", Courts have construed the term both narrowly and liberally. The case of *In re Tauber on Broadway, Inc.*, 271 F.2d 766 (7th Cir.1959), held that attorneys who had represented the debtor corporation's officers had an interest adverse to estate and were ineligible to represent the debtor. However, the Court in *In re Pacific Express, Inc.*, 56 B.R. 859, (Bankr.E.D.

7. 11 U.S.C. § 327.

8. 11 U.S.C. § 101(13) "disinterested person" means person that—

 (A) is not a creditor, an equity security holder, or an insider;

 (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders....

Cal.1985) found that even where attorney partners were involved in a joint venture with debtor and had served on debtors board, it did not constitute an interest "adverse" to debtors estate.

Following the majority, the Court in *In re Patterson*, 53 B.R. 366 (Bankr.D.Neb. 1985), denied compensation where the law firm was a pre-petition creditor of the debtor, and was co-owner of land with debtor. The Court relying on 11 U.S.C. § 327(a) and 11 U.S.C. § 101(13), held that a law firm that was a prepetition creditor was not "disinterested" and, therefore, not eligible to represent the debtor, notwithstanding 11 U.S.C. § 327(e) and (c), which provide that a professional person's concurrent employment by or representation of a creditor does not constitute a per se reason for disqualification absent an actual conflict of interest.

In *In re Pierce*, 809 F.2d 1356 (8th Cir. 1987) the appellate Court affirmed a lower Court decision that an attorney who held a pre-petition mortgage on debtors property was not "disinterested" under § 101(13) and, consequently, not eligible for employment under 327(a). The Court concluded that this represented not only lack of disinterestedness, but an interest materially adverse to the estate. Other Courts have held that the language of section 101(13) of the Code must be liberally construed, and that it should be left to the discretion of the Court as to whether the relationships are of such a degree that a Court should conclude that the applicant is not disinterested.[9] Courts have held that 11 U.S.C. § 101(13) should serve as a guideline for the exercising of the Courts judgment, and should not be used as an inflexible rule.

The Court in *In re Pacific Express,* supra, concluded that eliminating the exercise of discretion by the Court and requiring the prophylactic application of the definition in § 101 to § 327(a), § 328(c), and § 1103(b), might be inimical, to economic and efficient administration of debtor's estate. Under a strict interpretation of § 101, debtor and others would be deprived of the choice of professional persons irrespective of minimal pre-title 11 relationships, and in certain cases, strict construction could lead to expensive draconian results.

■ If, after disclosure of attorney's connection with the debtor, the Court determines that the attorney does not hold any interest adverse to the estate and that his employment is in the best interest of the estate, the Court may authorize employment. However, if debtor holds undisclosed adverse interest, the Court is empowered to deny all compensation and reimbursement of expenses.

In the case at bar, the Court finds that there was an ongoing relationship between part-time counsel, Clifton Smith, and the parent company of the debtor, but the results inured to the benefit of the estate, and were not adverse to it.

## NUNC PRO TUNC

■ Whether the Court has the authority to grant a Nunc Pro Tunc order of appointment is a controversial issue. Some Courts hold that such power is nonexistent. *Albers v. Dickinson,* 127 F.2d 957 (8th Cir.1942); *Matter of Futuronics Corp.,* 655 F.2d 463 (2nd Cir.1981); *In re Lewis,* 30 B.R. 404 (E.D.Pa.1983). Literally, the term means "an entry made now of something actually previously done to have effect of a former date ..." Black's Law Dictionary 5th ed. 964 (1974).

Under extraordinary circumstances, some Courts allow Nunc Pro Tunc orders upon a proper showing by the movant. *Matter of Triangle Chemicals,* 697 F.2d 1280 (5th Cir.1983); *Matter of Vlachos,* 61 B.R. 473 (Bankr.Ohio 1986).

When a professional is employed to further the interests of the estate, it seems proper that the estate compensate the professional. Bankruptcy Law provides for the payment of professional compensation in full as an administrative expense before other unsecured claimants receive any dis-

**9.** *Id.*

tribution.[10] These amounts result in a direct decrease in the amount available for payments of general, unsecured claims.[11] Therefore, Courts must carefully monitor the retention and compensation of professionals. It is for that reason that the Code requires prior Court approval before the professional commences rendering services. Failure to retain Court approval prior to rendering services may result in a denial of compensation.[12] This is a harsh result that may produce an inequitable windfall to the estate.

Some Courts seek to reach a more equitable result by allowing an order to be entered Nunc Pro Tunc, particularly when it can be shown that the failure to get prior approval has in no way damaged the estate or any parties with an interest in the estate.[13] In the instant case, there is no ascertainable or foreseeable damage to the estate by allowing the order to be entered, and there are benefits to the estate from the services rendered.

There is a split of authority on how this situation concerning Nunc Pro Tunc orders should be handled. The Third Circuit relied on the equitable power of the Bankruptcy Court to allow Nunc Pro Tunc orders to be entered. The Court in *In re Arkansas Co., Inc.*, 798 F.2d 645 (3rd Cir.1986), *quoted in,* 62 Am.Bankruptcy Law Journal 185, 191, holds:

> We now express our agreement with those circuits that hold that the Bankruptcy Courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power. See *In re Triangle Chemicals, Inc.*, 697 F.2d 1280 (5th Cir.1983); *In re Laurent Watch Co., Inc.*, 539 F.2d 1231 (9th Cir.1976) (per curiam); *Stolkin v. Nachman*, 472 F.2d 222 (7th Cir.1973). The Bankruptcy Courts have traditionally been governed by equitable principles rather than statutory technicalities.

*Bank of Marin v. England,* 385 U.S. 99, 103 [87 S.Ct. 274, 277, 17 L.Ed.2d 197] (1966) where equitable concerns weigh in favor of granting retroactive approval to enable deserving professionals to recover compensation for work actually done, we see nothing in the statute that denies the Bankruptcy Court the power to grant retroactive approval.

The Court in *In re Twinton Properties Partnership,* 27 B.R. 817 (Bankr.M.D. Tenn.1983) proposed a nine-part test for professionals seeking to enter Nunc Pro Tunc compensation orders. However, the "Twinton tests" are not a satisfactory method for determining when a Bankruptcy Court should use its equitable powers to enter a retroactive appointment order for a professional, and are, therefore, not enumerated here.

Assuming that the Court deems that it has the authority to enter such a retroactive order, the correct criteria for exercising the power are found in *In re Coast Trading, Inc.,* 62 B.R. 664 (Bankr.D.Or. 1986).

In *In re Coast Trading,* the Court stated:

> A professional seeking an untimely order authorizing employment should meet the requirements of § 327(a), and Bankruptcy Rule 2014(a) (except for the requirement of pre-employment approval), the same as any other applicant would. In addition, the professional must satisfactorily explain to the Court his failure to obtain prior Court approval.[14]

Ultimately, each case must be evaluated and assessed on its own unique facts and circumstances. In the instant case, the professional commenced performing services almost from the inception of the filing. The application for employment was submitted, and the order entered some twenty-eight (28) days later. The professional was in California and relied on local counsel,

---

**10.** 11 U.S.C. § 507(a) and 11 U.S.C. § 503(b)(2).

**11.** *In re Crook,* 62 B.R. 937 (Bankr.D.Or.1986).

**12.** *In re Futuronics Corp.,* 655 F.2d 463 (2nd Cir.1981) cert. denied 455 U.S. 941, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982).

**13.** *Hunter Savings Association v. Baggott Law Offices Company,* 34 B.R. 368 (S.D.Ohio 1983).

**14.** *Id.* at 667.

with whom he worked closely, to procure the order. Since local counsel did not submit the order until the bulk of the services were rendered, and did not, at that time, seek to have it entered Nunc Pro Tunc, it would be extremely inequitable to foreclose all compensation. It would have been financially burdensome to the estate for counsel to travel from California to Tennessee for the sole purpose of obtaining the order. Likewise, this Court believes that it was reasonable for part-time counsel to rely on local counsel to effectuate the order of employment. Counsel for Mr. Smith subsequently requested in his post-trial memorandum that the application and order be entered Nunc Pro Tunc. Through testimony and documents, Mr. Smith has satisfied the requirements expressed in *In re Coast Trading, Inc.*,[15] and the Court will allow the order to be entered Nunc Pro Tunc.

## REASONABLENESS OF FEES

█ The next issue that must be addressed is the reasonableness of the fees set forth in the petition. The Court in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) set forth guidelines for evaluating fee petitions.

These guidelines are:

1) The time and labor required.
2) The novelty and difficulty of the questions.
3) The skill requisite to perform the legal services properly.
4) The preclusion of other employment by the attorney due to the acceptance of the case.
5) The customary fee for similar work in the community.
6) Whether the fee is fixed or contingent.
7) Time limitations imposed by the client or the circumstances.
8) The amount involved and the results obtained.

9) The experience, reputation, and ability of the attorneys.
10) The undesirability of the case.
11) The nature and length of the professional relationship with the client.
12) Awards in similar cases.[16]

The Court in *Johnson* noted that the calculation of a reasonable attorney fee cannot be reduced to mathematical precision. This Court agrees. However, discretionary oversight rest within the province of the Court.

Section 330 provides in pertinent part (a) after notice ... and a hearing .... the Court may award to a trustee, an examiner, or a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney-

1) reasonable compensation for actual services rendered ... based on the time, the nature, the extent, and the value of such services ... and,
2) reimbursement for actual and necessary expenses.

The professional seeking interim compensation must file with the Court an application setting forth a detailed statement of services, and amounts requested from the estate.[17] 11 U.S.C. § 328 authorizes the Court to oversee compensation of professionals, and directs that it may allow compensation under terms and conditions it determines appropriate in light of the developments in the case.[18]

The *Wilson* Court addressed the question of reasonableness of fees, noting that clear and cogent standards had been set-out in *Ramos v. Lamm*, 713 F.2d 546 (10th Cir.1983). The *Ramos* Court concluded that absent unusual circumstances, the fee rates of the local area should be applied to lawyers from other areas seeking fees. *Id.* at 555. The Court in *Wilson* relying on congressional policy considerations stated: "It appears contrary to legislative intent to deny bankruptcy lawyers from other regions the normal fees charged clients when

**15.** *Id.*

**16.** *Id.* at 717.

**17.** Bankruptcy Rule 2016.

**18.** *In re Wilson Foods Corp.,* 36 B.R. 317 (Bankr. W.D.Okla.1984).

their expertise is needed in this venue." Accordingly, the Court in *Wilson* held that outside counsel may charge rates normally charged clients in their respective regional areas.[19]

In the instant case, the attorney provided valuable services to the estate. The bulk of those services were performed outside of this region, and much of the work was by telephone. Additionally, many meetings, conferences, and documents were drafted outside this locale. Taking those factors into consideration, the Court must acknowledge that more than mere bankruptcy expertise was involved and must be considered. The attorney, in question, was the draftsman of many of the acquisition documents, and other complex documents for Microwave Products of America during the original business acquisition. Clearly, there had to be some economy gained by having the benefit of the original draftsman in helping to interpret, construe and decipher those documents. Moreover, debtor's attorneys would probably have required considerably more time to scrutinize and interpret the documents for purposes of preparing their case, resulting in substantially greater cost to the estate, but for Mr. Smith's services. There was a definite benefit to the estate by Mr. Smith's efforts, and he should be compensated.

While Mr. Smith's hourly rate is in excess of the prevailing local rate, the Court will follow the reasoning in *In re Frontier Airlines*, 74 B.R. 973 (Bankr.D.Colo.1987), which holds that it is acceptable for the Court to award attorneys fees based on the rates charged by the attorney in the locale where he ordinarily practices. See also, *Matter of Baldwin United Corp.*, 36 B.R. 401 (Bankr.S.D.Ohio 1984); *In re Wilson Foods Corp.*, 36 B.R. 317 (Bankr.W.D.Okla. 1984).

## DUPLICATION

■ Finally, with respect to the allegations of duplication, and fees for travel

time, the Court certainly must carefully scrutinize these. Yet, in a complex, multistate case, there will inevitably be some duplication. In the instant case, there has been some duplication of necessity, because of multiple attorneys. There have been many matters expedited in an attempt to enhance, preserve, and protect the estate. Expectedly, there have been problems of coordination, correlation, and communication among the various attorneys. It is very difficult for the Court to second guess how much of the activity was unnecessary duplication, and how much was necessary. In the absence of stated guidelines, the Court must rely on the testimony of counsel during the hearing under strenuous cross-examination, and on the entries contained in the fee application, as well as subjective judgment. The Court is persuaded to the extent that duplication exists in the instant application, it was necessary and resulted in a benefit to the estate through a saving of time that the estate would ultimately have borne the cost. These are matters of reasonableness and of subjective judgment which must be utilized by the billing attorneys, ... and by the Court in evaluating time which has been duplicitous.[20]

## TRAVEL

With respect to travel time, this Court agrees with the statement of the Court in *Frontier* that "business travel is seldom pleasurable, and is often tiring and trying". The Court in *Frontier* holds that travel time must be distinguished from non-productive time spent in the office, yet finds that the question should be whether the travel was reasonable and necessary as opposed to whether the time spent was productive.[21] Without adopting or rejecting either standard, this Court will address the issue on the basis of "at what rate should the professional be compensated for travel time?"

19. *In re Wilson,* supra. at 322.

20. *In re Frontier Airlines, Inc.,* 74 B.R. 973 (Bankr.D.Colo.1987).

21. *Frontier,* at 979.

■ Certainly, travel time is rarely totally productive, yet it is necessary. However, it is unreasonable to tax the estate at the professional's full hourly rate for time spent traveling. The professional can be reimbursed fully for expenses related to travel, but not for the actual travel time.

■ Therefore, the Court shall allow the professional compensation at a rate of One Hundred Dollars ($100.00) per hour with respect to the following entries:

| 11/16 | Travel to Memphis | 1.7 |
| 11/17 | Travel to Memphis | 5.3 |
| 11/17 | Return to Los Angeles | 6.5 |
| 12/15 | Travel to and from Memphis | 8.0. |

## HOLDBACK

■ The U.S. Trustee correctly notes it is very early in an uncertain case for substantial awards of attorney fees. Consequently, the U.S. Trustee has requested the imposition of a substantial holdback should any attorneys fees be awarded. There is no Bankruptcy Code authority which mandates applying the "holdback" principle in every case. *In re Wilson Foods, Corp.*, 36 B.R. 317 (Bankr.W.D.Okla.1984). In fact, the statutory language of section 331 of the Code infers that full compensation may be awarded on an interim basis. The cases suggest a case by case analysis, taking into account the unique circumstances, is the more reasonable approach to adopt. In *Wilson*, the Court did not impose a holdback because the debtor's financial picture was bright. The debtor had substantial financial assets, it was an ongoing concern, major labor disputes had been settled, and all future projections were favorable. *Id.* at 322.

The *Wilson* Court went on to cite cases and conditions that were at the opposite end of the financial spectrum which justified the imposition of a holdback, i.e. debtor was substantially in the posture of liquidation, the condition of the debtor was tenous, or potential for survival was considered slim. While this Court does not have reason to place the instant debtor in one of the more bleak categories, it is safe to say that the debtors' future is uncertain. That uncertainty is sufficient to justify imposing a holdback as to interim fees. Since this case is in its very early stages, a substantial holdback of fifty percent (50%) is reasonable and will be imposed.

## CONCLUSION

■ For the reasons set forth above, the Court finds that the part-time counsel meets the requirement of 11 U.S.C. § 327(a) and (e), 11 U.S.C. § 1107(b), and Bankruptcy Rule 2014. Additionally, part-time counsel is not disqualified because of his pre-petition relationships with MHI, the parent company of the debtor nor by reasons of activities relating to the officers of the debtor's company, the other related negotiating entities. The Court is persuaded that substantial necessary services were performed, and that any possibility of a conflict has been obviated by Mr. Smith's resignation. Based on the application, subsequent declarations, and statements during the hearing, the Court finds that no actual conflict of interest existed that would have prohibited Mr. Smith from serving as part-time counsel for the debtor. Conversely, the Court finds that the unique prior relationship has enabled part-time counsel to provide highly beneficial services to the estate through reductions of time in interpreting complex documents for debtors' counsel. 11 U.S.C. § 327(e) does not hold special counsel to the same exacting standard of disinterestedness as primary attorneys representing the estate under 11 U.S.C. § 327(a). Mr. Smith is sufficiently disinterested, and the Court finds that he holds no interest adverse to the estate.

The November 25, 1988, order appointing part-time counsel is allowed entered Nunc Pro Tunc to October 28, 1988, the date part-time counsel commenced rendering services to the estate. To do otherwise would result in an inequitable windfall to the estate. Further, counsel has satisfactorily explained the reasons for the delay in entering the order, and has not shown a pattern of neglect in this district.

Mr. Smith will be allowed to bill the estate at his regular hourly rate of Two Hundred Twenty-five Dollars ($225.00) per hour, however, travel time may only be

billed at One Hundred Dollars ($100.00) per hour. Total travel time is listed as 21.5 hours.

Since the future of the debtor is uncertain at this time, and the Court finds sufficient cause to impose a fifty percent (50%) holdback. The professional is entitled to interim compensation in the amount of Thirty-three Thousand Two Hundred Sixty-seven Dollars Fifty Cents ($33,267.50), and expenses of One Thousand Twelve Dollars and Fifty-one Cents ($1,012.51) as stated in the fee application, for a total of Thirty-four Thousand Two Hundred Eighty Dollars and One Cent ($34,280.01). This figure is subject to fifty percent (50%) holdback.

IT IS SO ORDERED.